1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CLARKSON LAW FIRM, P.C.**
Ryan J. Clarkson (SBN 257074)
*rclarkson@clarksonlawfirm.com*
Katherine A. Bruce (SBN 288694)
*kbruce@clarksonlawfirm.com*
Kelsey J. Elling (SBN 337915)
*kelling@clarksonlawfirm.com*
22525 Pacific Coast Highway
Malibu, CA 90265
Tel: (213) 788-4050
Fax: (213) 788-4070

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

TESHA GAMINO, individually and on behalf of all others similarly situated,

Plaintiff,

v.

SPIN MASTER, INC., and THE MAYA GROUP, INC.,

Defendants.

Case No.: 5:23-cv-02242

## CLASS ACTION COMPLAINT

1. Violation of Unfair Competition Law (Cal. Bus. & Prof. Code §§ 17200, *et seq.*)
2. Violation of False Advertising Law (Cal. Bus. & Prof. Code § 17500)
3. Violation of Consumers Legal Remedies Act (Cal. Civ. Code §§ 1750, *et seq.*)
4. Breach of Warranty
5. Fraudulent Inducement— Intentional Misrepresentation
6. Negligent Misrepresentation
7. Unjust Enrichment

## JURY TRIAL DEMAND

Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway   |   Malibu, CA 90265

# **TABLE OF CONTENTS**

**Page No.**

I.    INTRODUCTION ................................................................ 1

II.   JURISDICTION ................................................................. 7

III.  VENUE ............................................................................. 7

IV.   PARTIES .......................................................................... 7

    A.    Plaintiff ................................................................ 7

    B.    Defendants .......................................................... 9

V.    FACTUAL ALLEGATIONS ............................................ 11

    A.    Water Beads Background ................................... 11

    B.    Dangerous Health Hazards Associated with Water Beads & Their Impact on Children's Health and Well-Being ...................... 16

    C.    Materiality of Material Omissions, Reasonable Consumer's Perception, and the Failure of the Products to Fulfill Defendants' Promises ........... 25

    D.    Plaintiff and Reasonable Consumers Were Misled by the Material Omissions into Buying the Products, to Their Detriment ..................... 28

    E.    The Products are Substantially Similar ................................. 36

    F.    No Adequate Remedy at Law ............................ 37

VI.   CLASS ACTION ALLEGATIONS ................................ 39

VII.  CAUSES OF ACTION ..................................................... 43

    COUNT ONE ............................................................ 43

        "Unfair" Prong ........................................... 46

        "Fraudulent" Prong ..................................... 48

        "Unlawful" Prong ....................................... 49

    COUNT TWO ............................................................ 51

    COUNT THREE ....................................................... 53

    COUNT FOUR .......................................................... 56

    COUNT FIVE ............................................................ 58

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

COUNT SIX ................................................................................. 60

COUNT SEVEN ........................................................................... 63

VIII. PRAYER FOR RELIEF ................................................................. 65

DEMAND FOR JURY TRIAL............................................................ 67

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

**COMPLAINT**

1.      Plaintiff Tesha Gamino ("**Plaintiff**"), individually and on behalf of all others similarly situated, as more fully described herein (the "**Class**" and "**Class Members**"), bring this class action complaint against Defendants Spin Master, Inc. ("**Spin Master**") and The Maya Group, Inc. ("**Maya**") (collectively, "**Defendants**"), and allege the following based upon information and belief, unless otherwise expressly stated as based upon personal knowledge.

## I.   INTRODUCTION

2.      **Overview.** No one should ever lose a child to a toy. That is the founding principle of this lawsuit, and a principle that Defendants wholly ignore through their labeling and advertising of their water beads products. Consumers purchase children's toys with an eye toward entertainment and education, but the desire to entertain and educate is never intended to sacrifice safety. Parents, teachers, guardians, and other caregivers rely on the manufacturer to accurately and completely disclose significant and hidden dangers posed by the toy when considering whether it is safe for children. Companies, like Defendants, market, manufacture, distribute, and sell children's toys to make millions off the consumers' demand for safe and educational toys.[1]

3.      **Water Beads Background.** Water beads are marketed as a children's toy that have garnered immense popularity over the last decade. Water beads are tiny, spherical, and gelatinous toys that look strikingly similar to candy.[2] They are often marketed as sensory toys intended for children to squish, squeeze, and move them

---

[1] Since 2019, children's toys have amassed at least $20 Billion each year in retail sales. *Total Retail Sales Revenue of Toys in the United States from 2019 to 2022*, STATISTA, https://www.statista.com/statistics/195054/total-revenue-of-us-toys-and-games-market-since-2005/ (last visited Oct. 2, 2023). Defendant Spin Master made $2.02 Billion in 2022, and specifically made over $200 Million in 2021 in its "Activities, Games & Puzzles and Plush" category, which encompasses Orbeez sales. *Spin Master Reports Preliminary 2021 and Q4 2021 Revenue*, SPIN MASTER, https://www.spinmaster.com/en-US/corporate/media/press-releases/122889/ (last visited Oct. 2, 2023).

[2] *Nobody Should Lose Their Child Over a Toy*, CONSUMER REPORTS (Sept. 28, 2023), https://www.consumerreports.org/babies-kids/toys/water-beads-pose-a-serious-safety-risk-to-children-a6431187819/.

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

around to aid in their fine motor development.[3] Water beads' unique calling-card is that they are made from superabsorbent polymers that expand up to 1,500 times their original size when exposed to water.[4]

  4. **Hidden Dangers of Water Beads.** What consumers do not know about water beads—and cannot discern from relying on the manufacturers' safety representations—is that water beads present severe health risks to children that put their lives in danger. Such dangers arise when children ingest or insert water beads into their bodies, which can lead to a host of life-threatening and severe injuries, unless the water beads are identified and surgically removed. The injuries that may be caused by water beads include, but are not limited to, gastrointestinal blockages; nasal cavity, ear canal, and respiratory obstructions; vomiting and severe dehydration; seizures; hearing loss; and death.[5] To exacerbate these concerns further, water beads are practically invisible on x-rays and are thus extremely difficult for doctors and medical professionals to detect, which can lead to misdiagnoses and detrimental delays in treatment.[6] These risks are every parent's worst nightmare. This case is about Defendants, the manufacturers, marketers, advertisers, and sellers of certain water beads products, that chose to forego warning parents and consumers about these

---

[3] *Id.*

[4] *Water Beads: Harmful if Swallowed, Put in Ears*, HEALTHY CHILDREN (Sept. 14, 2023), https://www.healthychildren.org/English/safety-prevention/at-home/Pages/Water-Beads-Harmful.aspx#:~:text=When%20the%20tiny%2C%20hard%20plastic,be%20dried%20out%20and%20reused.

[5] American Academy of Pediatrics, *Water Absorbing Polymer Beads*, 35 AAP NEWS 1 (2014) ("These soft, colorful products can be mistaken by a child for candy. When swallowed, they can expand inside a child's body and block the intestines, which can be uncomfortable, cause vomiting, and dehydration, and can be life-threatening. Surgery may be necessary to remove them."); American Academy of Pediatrics, *Water-Absorbing Polymer Beads*, 34 AAP NEWS 1 (2013) ("When the bead is ingested, it expands and can cause intestinal obstructions inside a child's body, resulting in severe pain, vomiting, dehydration or death. The toys do not show up on an X-ray, and surgery must be used to remove them."); *Nobody Should Lose Their Child Over a Toy*, *supra* note 2 (discussing how a 10-month-old died after swallowing water beads).

[6] *Nobody Should Lose Their Child Over a Toy*, *supra* note 2.

severe and life-changing risks to take advantage of their desire for safe, entertaining, and educational children's toys. Defendants did this despite the alarming rate of several thousand reported water beads-related hospitalizations of children across the country, per year, since at least 2017, including several reported deaths, all stemming from the known or reasonably knowable risks of obstructions and latent or non-detections. Unfortunately, the water beads products are not nearly as safe as Defendants deliberately lead people to believe, causing consumers to overpay millions and forego safer alternatives, all while putting hundreds of thousands of children in danger. In this way, Defendants have not only bilked millions of dollars from consumers in ill-gotten gains, but Defendants have put the health and welfare of thousands of children at risk.

5. **Material Dangers and Omissions.** In an effort to increase profits and gain an unfair advantage over their lawfully acting competitors, Defendants falsely and misleadingly market, advertise, label, and package certain of their water beads by failing to adequately inform consumers that (1) the Products, when ingested or inserted in the body (e.g., nasal cavity, ear canal, respiratory, and gastrointestinal system) can significantly expand beyond their original size, causing severe and life-threatening injuries, such as intestinal blockage or obstruction of the nasal cavity, ear canal, and/or respiratory system (the "**Obstruction Omission**" and/or "**Obstruction Danger**"); and (2) that the Products are difficult to detect and diagnose because they are practically invisible on x-rays (the "**Non-Detection Omission**" and/or "**Non-Detection Danger**") (collectively, the "**Material Omissions**" and/or "**Material Dangers**"). *See* **Exhibit 1** (Product Images); *see also*, *infra* at ¶¶ 20-31. The Material Omissions mislead reasonable consumers into believing that the Products do not pose risks of the Material Dangers, thus lulling reasonable consumers into a false sense of security. Defendants fail to provide adequate safety warnings to consumers regarding the Material Dangers before consumers purchase the Products by stating expressly, clearly, and conspicuously on the Products' front packaging and labels that the

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

3

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Products pose these severe and life-threatening risks—to wit, the Obstruction Danger and the Non-Detection Danger.

6. **The Deception of the Material Omissions and Unlawful Marketing & Sale of the Products.** The Material Omissions have misled reasonable consumers, including Plaintiff and the Class, into believing that the Products do not pose the Obstruction Danger and the Non-Detection Danger. However, the Products fail to live up to Defendants' promises. Contrary to the reasonable consumer's perception of the Products with the Material Omissions, the Products pose severe health risks to children, specifically the Obstruction Danger and the Non-Detection Danger, that put children's lives in danger. Through falsely, misleadingly, and deceptively marketing the Products with the Material Omissions, Defendants have sought to take advantage of consumers' need for children's toys that are safe. In this way, Defendants have charged consumers a premium for Products that they would not otherwise have paid if Defendants disclosed the Material Dangers. Defendants have done so at the expense of unsuspecting consumers, as well as Defendants' lawfully acting competitors, over whom Defendants maintain an unfair competitive advantage in the sale of safe children's toys. Accordingly, Defendants' Material Omissions are misleading and deceptive, and therefore unlawful.

7. **The Products.** The Products at issue are Orbeez Brand water beads toys, sold in the United States, with the Material Omissions on the Products' labels and/or packaging, in all sizes, variations, packs, sets, and bundles (collectively referred to herein and throughout this complaint as the "**Products**"). The Products include, but are not necessarily limited to:

a.  (1) Orbeez *Water Beads Packs*, including

   1)   Activity Orb (400 Beads)

   2)   Activity Orb Double Pack (800 Beads)

   3)   Activity Orb Fidget Pack – 4 Mini-Activity Playsets (1,600 Beads)

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

1    4) Color Pack (1,000 Beads)

2    5) Color Seed Pack (1,000 Beads)

3    6) Glow in the Dark Feature Pack (1,200 Beads)

4    7) Glow in the Dark Water Beads Seeds (50,000 Beads)

5    8) Grown Mega Pack (2,000 Beads)

6    9) Grown Orbeez Bundle (1,600 Beads)

7    10) Grown Orbeez Tube (400 Beads)

8    11) Micro Mix (2,500 Beads)

9    12) Mixin' Slime Set (2,500 Beads)

10    13) Multi-Colored Shimmer Feature Pack (1,300 Beads)

11    14) Multipack (2,000 Beads)

12    15) Rainbow Water Beads Seeds (75,000 Beads)

13    16) Seed Mega Refill (6,000 Beads)

14 (*see* **Exhibit 1-1 to 1-16** [Product Images for Orbeez *Water Beads Packs*]);

15   b. (2) Orbeez *Water Beads Playsets*, including

16    17) Color Meez Activity Kit (1,200 Beads)

17    18) Hand Spa (1,000 Beads)

18    19) Relaxing Hand Spa (600 Beads)

19    20) Sensation Station - Glow in the Dark Water Beads (2,000 Beads)

20    21) Sensation Station (2,000 Beads)

21    22) Soothing Foot Spa (2,000 Beads)

22 (*see* **Exhibit 1-17 to 1-22** [Product Images for Orbeez *Water Beads Playsets*]);

23   c. (3) Orbeez *Water Beads Art*, including

24    23) Crush'n Design Set – Butterfly and Fairy (300 Beads)

25    24) Kaleidoscope (1,500 Beads)

26    25) Orbeez Art (2,500 Beads)

27 (*see* **Exhibit 1-23 to 1-25** [Product Images for Orbeez *Water Beads Art*]);

28   d. (4) Orbeez *Water Beads Play Creatures*, including

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

26) Crushkins Pets (1,200 Beads)

27) Crushkins Safari (1,200 Beads)

28) Zorbeez Creature Chumper – Big Ben (1,500 Beads)

29) Zorbeez Monster Oozers – Fish Faced Fred (850 Beads)

30) Zorbeez Monster Oozers – Shaggy Shredder Sam (850 Beads)

31) Zorbeez Monster Oozers – Spaced Out Max (850 Beads)

(*see* **Exhibit 1-26 to 1-31** [Product Images for Orbeez *Water Beads Play Creatures*]).

8.     **Primary Dual Objectives.** Plaintiff brings this action individually and in a representative capacity on behalf of those similarly situated consumers, such as parents, guardians, friends, other family members (aunts, uncles, etc.), teachers, daycare providers, after school care providers, nannies, babysitters, and other childcare providers, who purchased the Products during the relevant Class Period (Class and/or Subclass defined *infra* at ¶ 52) for dual primary objectives. ***One***, Plaintiff seeks, on Plaintiff's individual behalf and on behalf of the Class/Subclass, a monetary recovery of the price premium they have overpaid for Products as a result of the Material Omissions, as consistent with permissible law (including, for example, damages, restitution, disgorgement, and any applicable penalties/punitive damages solely as to those causes of action so permitted). ***Two***, Plaintiff seeks, on Plaintiff's individual behalf and on behalf of the Class/Subclass, injunctive relief to stop Defendants' unlawful manufacture, marketing, and sale of the Products with the Material Omissions to avoid or mitigate the risk of deceiving the public into believing that the Products do not pose the Obstruction Danger and the Non-Detection Danger, by requiring Defendants to change their business practices, which may include one or more of the following: disclosure of the Material Omissions on the Products' labels and/or packaging; disclosure of the Material Omissions in the Products' advertising; modification of the Products so that they no longer pose severe and life threatening dangers to children; and/or discontinuance of the Products' manufacture, marketing, and/or sale.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

## II.    JURISDICTION

9.      This Court has original jurisdiction over the action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because the proposed Class consists of 100 or more members; the amount in controversy exceeds $5,000,000, exclusive of costs and interest; and minimal diversity exists. This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

## III.   VENUE

10.     Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this District. Specifically, Plaintiff, as identified below, purchased the unlawful Products in this District, and Defendants have marketed, advertised, and sold the Products within this District with the Material Omissions.  In addition, Defendant Spin Master, Inc. maintains a principal place of business and headquarters in the City of Los Angeles, California; and Defendant The Maya Group, Inc., maintains a principal place of business and headquarters in the City of Huntington Beach, California. Thus, all Defendants maintain a principal place of business and headquarters within this District and are therefore residents of this District.

## IV.   PARTIES

### A.     Plaintiff

11.     **Plaintiff Tesha Gamino.** The following is alleged based upon Plaintiff Gamino's personal knowledge:

    a. **Residence.** Plaintiff Gamino is a resident of the County of Riverside, in the State of California.

    b. **Purchase Details.** Plaintiff Gamino purchased the (a) the Orbeez Color Meez Activity Kit (1,200 Beads) (*see* Exhibit 1-17) and (b) Orbeez Color Seed Pack (1,000 Beads) (*see* Exhibit 1-5) (collectively, the "**Gamino Purchased Products**"). Plaintiff Gamino purchased the Orbeez Color Meez Activity Kit (1,200 Beads) for approximately $10.00 at a store located in Riverside County in the State of California in or around Winter 2020. *See* **Exhibit 1-17** (Exemplar Color Meez Activity Kit Image). Between in or around Fall 2022 and in or around January 2023, Plaintiff Gamino purchased approximately 10 packs of the Orbeez Color Seed Pack (1,000 Beads)

for approximately $5.00 per pack at a store located in Riverside County in the State of California. *See* **Exhibit 1-5** (Exemplar Color Seed Pack Image).

c. **Reliance on Material Omissions to Form Reasonable Safety Perception.** In making the purchases, Plaintiff Gamino reviewed the Gamino Purchased Products' packaging and labels. Plaintiff Gamino did not notice any safety warnings regarding either the Obstruction Danger or the Non-Detection Danger. This led Plaintiff Gamino to believe that the Gamino Purchased Products does not pose a risk of the Material Dangers.

d. **No Actual Knowledge of Falsity.** At the time of purchase, Plaintiff Gamino did not know that the Products posed a risk of the Obstruction Danger and the Non-Detection Danger.

e. **No Notice of Contradictions.** Plaintiff Gamino did not notice any disclaimer, qualifier, or other explanatory statement or information on the Gamino Purchased Products' labels or packaging that disclosed the Material Omissions or otherwise suggested that the Products pose a risk of the Obstruction Danger and/or the Non-Detection Danger.

f. **Causation/Damages.** Plaintiff Gamino would not have purchased the Products or would not have paid as much for the Gamino Purchased Products, had Plaintiff known of the Material Omissions—i.e., that the Products pose a risk of the Obstruction Danger and/or the Non-Detection Danger.

g. **Desire to Repurchase.** Plaintiff Gamino continues to see the Products available for purchase and desires to purchase them again if the Products were safe—i.e., if the Products did not pose the Obstruction Danger and/or the Non-Detection Danger.

h. **Lack of Personal Knowledge/Expertise to Determine Truth.** Plaintiff Gamino is not personally familiar with the science behind the Products as Plaintiff does not possess any specialized knowledge, skill, experience, or education in water beads, the safety risks related to water beads and/or children's toys, and/or the diagnosis and treatment of health conditions related to water beads and/or children's toys. Thus, Plaintiff Gamino is unable to determine whether the Products present Material Dangers—i.e., whether the Products do or do not pose a risk of the Obstruction Danger or the Non-Detection Danger.

i. **Inability to Rely.** Plaintiff Gamino is, and continues to be, unable to rely on the Material Omissions on the Products' labels and packaging to evaluate the safety of the Products with respect to the Material Dangers.

12. **Plaintiff's Future Harm.** Defendants continue to market and sell the Products with the Material Omissions. Plaintiff would like to purchase the Products in the future if they lived up to the reasonable consumer's perception of the Products as free of the Material Dangers. However, Plaintiff is an average consumer. The

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

8

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

average consumer is not sophisticated in, for example, the dangers of water beads made from superabsorbent polymers, similar to and including the Products, the ability of x-rays to detect water beads or similar products, and/or the extent of the health risks associated with water beads once ingested or inserted in the human body. Since Plaintiff would like to purchase the Products again to obtain the benefits of a safe children's toy—despite the fact that the Products were once marred by misleading advertising or warranties—Plaintiff would likely and reasonably, but incorrectly, assume the Products are true to and conform with the reasonable consumer's perception of the Products as free from the Material Dangers based on a review of the Products' labels, packaging, and advertisements that contain the Material Omissions. Accordingly, Plaintiff is at risk of reasonably, but incorrectly, assuming that Defendants have fixed the Products to avoid the Material Dangers, such that Plaintiff may buy them again, believing they are no longer falsely advertised and warranted. In this regard, Plaintiff is currently and in the future deprived of the ability to rely on the Material Omissions in deciding to purchase the Products.

**B.    Defendants**

13.    **Defendant Spin Master, Inc. ("Defendant Spin Master")** is a corporation that has headquarters and a principal place of business in the City of Los Angeles, State of California. Defendant Spin Master was doing business in the State of California at all relevant times, including the Class Period. Directly and through its agents, Defendant Spin Master has substantial contacts with and receives substantial benefits and income from and through the State of California. Defendant Spin Master is one of the owners, marketers, manufacturers, distributors, and/or sellers of the Products, and is one of the companies that created and/or authorized the labels, packaging, and advertising of the Products with the Material Omissions. Defendant Spin Master and its agents promoted, marketed, and sold the Products at issue throughout the United States, including in particular the State of California and this County or District. The unfair, unlawful, deceptive, and misleading Material

9

Omissions on the Products were prepared, authorized, ratified, and/or approved by Defendant Spin Master and its agents to deceive and mislead consumers in the State of California and United States into purchasing the Products. Additionally, Defendant Spin Master knew or should have known of the Material Omissions, but it failed to adequately disclose them at the time Plaintiff and all Class Members purchased the Products, notwithstanding Defendant Spin Master's duty to do so. Further, Defendant Spin Master had the right and authority, at all relevant times, to disclose the Material Omissions, including the time leading up to and through the incident giving rise to the claims asserted herein (including, Plaintiff's purchases described *supra* at ¶ 11 in addition to all Class Members' purchases).

14. **Defendant The Maya Group, Inc. ("Defendant Maya")** is a corporation that has headquarters and a principal place of business in the City of Huntington Beach, State of California. Defendant Maya was doing business in the State of California at all relevant times, including the Class Period. Directly and through its agents, Defendant Maya has substantial contacts with and receives substantial benefits and income from and through the State of California. Defendant Maya is one of the owners, marketers, manufacturers, distributors, and/or sellers of the Products, and is one of the companies that created and/or authorized the labels, packaging, and advertising of the Products with the Material Omissions. Defendant Maya and its agents promoted, marketed, and sold the Products at issue throughout the United States, including in particular the State of California and this County or District. The unfair, unlawful, deceptive, and misleading Material Omissions on the Products were prepared, authorized, ratified, and/or approved by Defendant and its agents to deceive and mislead consumers in the State of California and United States into purchasing the Products. Additionally, Defendant Maya knew or should have known of the Material Omissions, but it failed to adequately disclose them at the time Plaintiff and all Class Members purchased the Products, notwithstanding Defendant Maya's duty to do so. Further, Defendant Maya had the right and authority, at all

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

relevant times, to disclose the Material Omissions, including the time leading up to and through the incident giving rise to the claims asserted herein (including, Plaintiff's purchases described *supra* at ¶ 11 in addition to all Class Members' purchases).

## V. FACTUAL ALLEGATIONS

### A. Water Beads Background

15. **Water Beads Composition and Expansion Properties.** Water beads are made from superabsorbent polymers.[7] The vast majority of water beads manufactured today are made from petroleum, polyacrylate, acrylics, and the chemical acrylamide.[8] Acrylamide is a chemical often found in foods cooked at high temperatures and has been found to cause cancer in animals exposed to high doses.[9] Acrylamide is also used to produce industrial plastics, and is found in cigarette smoke.[10] In water beads manufacturing, the result of the chemical reaction of acrylamide is a large chain of molecules forming a super absorbent polymer.[11] These superabsorbent polymers, when exposed to water (or other fluids), expand to exponentially greater sizes—sometimes up to 1,500 times their original size.[12] For example, water beads can expand from the size of a small marble to the size of a golf ball when exposed to water.[13] Bodily fluids activate water beads' expansion properties. The fluid in the duodenum, the first part of the small intestine, has a high pH value, which increases water beads' expansion.[14] Respiratory mucus also triggers expansion as it is 95-

---

[7] *Are Water Beads Toxic?*, POISON CONTROL, https://www.poison.org/articles/are-water-beads-toxic (last visited Oct. 10, 2023).
[8] *Id.*; *Water Beads: Harmful if Swallowed, Put in Ears*, *supra* note 4.
[9] *Acrylamide Questions and Answers*, FDA (Sept. 25, 2022) https://www.fda.gov/food/process-contaminants-food/acrylamide-questions-and-answers.
[10] *Id.*
[11] *Are Water Beads Toxic?*, *supra* note 7.
[12] *Id.*
[13] *Id.*
[14] Hye Bo Kim, et al., *A Case of Ingested Water Beads Diagnosed with Point-of-Care Ultrasound*, 7 CLIN. EXP. EMERG. MED. 330, 330-333 (2020) (available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7808832/).

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

percent water.[15] Depending on their original size when dry, water beads, for example, can expand from the size of an ice-cream sprinkle to the size of a marble or from the size of a marble to the size of a golf ball.[16]

16. **Water Beads Purpose and Target Market.** Water beads are marketed and used as learning and motor development children's toys for children five years-old and older.[17] Water beads are promoted as helping children develop their sensory skills, fine motor skills, color recognition, and creativity.[18] Additionally, water beads are often promoted as developmental toys to help children with autism and other developmental conditions.[19] Their marketed use is for children to roll, squeeze, squish, bounce, or crush them in their hands.[20] Some manufacturers, including Defendants, even advertise that children should play with water beads by filling an entire pool with them.[21]

17. **Regulatory Recognition of the Danger of Expanding Materials Children's Toys.** Children's toys that expand, such as water beads, must meet certain safety requirements under federal law.  The Consumer Product Safety Improvement Act made the standards set forth by the American Society for Testing and Materials (ASTM), specifically ASTM F963, a mandatory consumer product safety standard.[22] Within ASTM F963, are testing requirements for toys classified as expanding materials, which test objects' ability to pass through a 20 mm gap to simulate a three-

---

[15] Nasser Alharbi & Maryam Dabbour, *Aspiration of Superabsorbent Polymer Beads Resulting in Focal Lung Damage: A Case Report*, 20 BMC PEDIATRICS 262-267 (2020) (available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7257448/).
[16] *Nobody Should Lose Their Child Over a Toy*, *supra* note 2.
[17] *Water Beads – Everything You Need to Know*, 7 DAYS OF PLAY, https://7daysofplay.com/water-beads-guide/#:~:text=cautions%20before%20using.-,The%20Educational%20Benefits,concepts%20to%20your%20little%20ones   (last visited Oct. 10, 2023).
[18] *Id.*
[19] *Water Beads: Harmful if Swallowed, Put in Ears*, *supra* note 4.
[20] *Orbeez, The One and Only, Glow in the Dark Water Beads, 50,000 Beads, Safety-Tested Sensory Toys for Kids Aged 5 and Up*, ORBEEZ, https://orbeezone.com/en_us/products/778988343425 (last visited Oct. 10, 2023).
[21] *Id.*
[22] 16 C.F.R. § 1250.2.

year-old's small intestine, which is necessarily larger than an infant or toddler's small intestines that has been found to be as small as 12mm in diameter on average.[23] ASTM F963 recognizes that expanding material toys, such as water beads, present serious risks of injury and death.[24] ASTM F963, however, fails to adequately guard against these risks as it does not account for children under the age of 3 who are likewise exposed to the toys and whose intestines are far narrower than 20 mm in diameter.[25]

18. **Regulators Warn Current Testing Standards Are Not Sufficient.** Numerous incident reports involving water beads since the adoption of ASTM F963 further illustrate that merely complying with the current standard does not sufficiently protect children from these toys' dangers.[26] The Consumer Product Safety Commission (CPSC), a federal entity aimed at educating consumers, establishing voluntary and mandatory standards, and enforcing those standards for consumer products, concluded that the expanding materials requirement under ASTM F963 is not stringent enough, given the 248 water beads related incident reports and the estimated 4,500 emergency room visits all occurred after the adoption of ASTM F963.[27] Specifically, CPSC staff members wrote ASTM International:

---

[23] *Id.*; ASTM INT'L, F963-17 – STANDARD CONSUMER SAFETY SPECIFICATION FOR TOY SAFETY, § 4.40 Expanding Materials, pp. 42 (2017); E.M. Haworth, et al., *Radiological measurement of small bowel calibre in normal subjects according to age*, 18 Clinical Radiology 417, 417-421 (1967), available at https://www.sciencedirect.com/science/article/abs/pii/S0009926067800515 (accessed Oct. 25, 2023) ("The calculated standard measurement for children increased from 12 mm. at 6 months to 21 mm. at 8 years and 23 mm. at 15 years of age").

[24] ASTM INT'L, F963-17 *supra* note 23 at § A12.3, pp. 107.

[25] *See* E.M. Haworth, et al., *Radiological Measurement of Small Bowel Calibre in Normal Subjects According to Age*, 18 CLINICAL RADIOLOGY 417, 417-421 (1967), available at https://www.sciencedirect.com/science/article/abs/pii/S0009926067800515#:~:text=The%20calculated%20standard%20measurement%20for,at%2015%20years%20of%20age (accessed Oct. 25, 2023) (The calculated standard measurement for children increased from 12 mm at 6 months to 21 mm at 8 years and 23 mm at 15 years of age).

[26] Benjamin Mordecai (CPSC), *Letter to ASTM: Expanding Materials* (February 7, 2023) (available at https://www.cpsc.gov/s3fs-public/2-7-23-Letter-to-ASTM-Expanding-Materials.pdf?VersionId=J6C99JbHigMfjRMQRBP_NO85vcvftuq9).

[27] *Id.*

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

CPSC staff is aware of an increasing number of incidents involving water beads. Water beads may swell if ingested, aspirated, or inserted into the nose or ears, causing occlusions to the respiratory airway or gastrointestinal tract. Many incidents of water bead ingestion lead to bowel obstruction, requiring surgical intervention, while ear insertion of water beads leads to surgery, damage to the structures of the ear, and hearing loss. Even after inception of the 2016 expanding material requirements in ASTM F963, there have been at least 248 known cases as reported to the National Electronic Injury Surveillance System (NEISS) from 1/1/2017 to 11/22/2022. Of the 248 NEISS incident reports related to water beads:

- 112 . . . involved ingestion;
- 100 involved ear canal insertion;
- 35 involved nasal cavity insertion; and
- 1 involved eye injury

The NEISS-reported incidents produce a national estimate for the period 2017-2021 of 4,500 emergency department visits associated with water beads. Staff is aware of 62 specific incidents occurring from 1/1/2017 to 11/22/2022, as reported in the Consumer Product Safety Risk Management System (CPSRMS). Of the 62 CPSRMS incidents (some of which may duplicate reports from NEISS):

- 53 . . . involved ingestion;
- 5 involved ear canal insertion; and
- 4 involved nasal cavity insertion.

. . . .

CPSC staff requests that the toy safety F15.22 subcommittee schedule a meeting to discuss the data and develop more stringent performance requirements to address these incidents. The dimensions on which CPSC staff seeks consultation include whether (1) F963's 20 mm gap is too large (particularly given the younger ages seen in incident data, as young as 10 months old), and (2) the 20 N force applied is too strong. We caution, however, that such changes may address only gastrointestinal blockage and not ear or nose insertion hazard patterns, or other as yet unidentified hazards related to this product.

*Id.*

19.  **Outcry from Parents and Doctors Over the Dangers of Water Beads.**

Consumers, and parents in particular, have been denouncing water beads for over a decade. For example, Ashley Haugen, runs a non-profit organization, That Water Bead Lady, to educate the public about the dangers of children playing with water beads.[28] Her daughter tragically ingested water beads that required surgical removal from her intestines. *Id.* Despite their removal, her daughter was diagnosed with Toxic

---

[28] *Water Beads Toxic? Read Kipley's Story*, THAT WATER BEAD LADY, https://thatwaterbeadlady.org/kipleys-story (last visited Oct. 10, 2023).

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

Brain Encephalopathy as a result of the water beads that she ingested. *Id.* Ashley Haugen spoke with the CPSC about her and her daughter's experience with water beads in February 2023, pointedly stating: "there's no reason to market water beads as toys and, if they are marketed as toys, they can be made of other types of safer ingredients, including food."[29] Sadly, Ashley Haugen is not the only parent whose child has experienced serious health complications from water beads. Countless parents and medical professionals, through blogs and news outlet interviews, have implored government actors and manufacturers to properly warn of the severe dangers with water beads or halt the sale of them altogether in order to prevent children from being injured and losing their lives.[30] The call for help from parents and caregivers alike can be summarized in one statement: No one should lose their child over a toy.[31] Doctors have also spoken out against water beads to reporters. In 2021, doctors spoke to a local news reporter in Minnesota citing the danger of water beads stating that "[i]f one gets into a child's ear, which some children like to put stuff into their ears, it can expand if it gets wet and it gets stuck and there have been reports of rupturing their ear drum or even permanently losing their hearing from that."[32] Another doctor spoke to local news reporters in 2021 in Texas classifying water beads as "an attractive

---

[29] CPSC, *Log of Meeting Directorate for Health Sciences: CPSC Staff Meeting with That Water Bead Lady* (Feb. 24, 2023) (available at https://www.cpsc.gov/s3fs-public/CPSC-staff-meeting-with-That-Water-Bead-Lady.pdf?VersionId=J.KDbJTafS02Gqmo.5rOmsDbnmiCHYg6).

[30] *See, e.g.*, *Doctors Warn Patients About Hazardous Water Bead Toys*, NETMUMS (Oct. 12, 2017), https://www.netmums.com/child/doctors-warn-parents-about-hazardous-water-bead-toys; Madeline Cox, *Our 6yo's Present Was Labelled 'Non-Toxic' – But it Poisoned Her Baby Sister: A Tik Tok Mum Warns About the Dangers of Water Beads After Her 10-Month-Old Baby Now Lives with a Brain Injury*, KID SPOT (Dec. 8, 2021), https://www.kidspot.com.au/news/our-6yos-present-was-labelled-nontoxic-but-it-poisoned-her-baby-sister/news-story/dfc4cf37f1fa4055097e921a8b31fca1; Meghan Holohan, *Moms Have Been Warning About Water Bead Dangers. Now There's a Massive Recall*, TODAY (Sept. 14, 2023) https://www.today.com/parents/moms/water-bead-mom-warning-rcna73155; *Nobody Should Lose Their Child Over a Toy*, *supra* note 2.

[31] *Nobody Should Lose Their Child Over a Toy*, *supra* note 2.

[32] Sarah Danik, *Doctors Warn Parents of Dangers of Water-Absorbing Beads*, FOX 9 KMSP (May 19, 2021, 10:30 PM), https://www.fox9.com/news/doctors-warn-parents-of-dangers-of-water-absorbing-beads.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

danger," emphasizing that water beads "are so colorful and attractive to children" that "when I saw a picture of them, I wanted to put one in my mouth and taste it, too."[33] The doctor went on to describe how in one week they had two children come in who had swallowed water beads that required major surgery to remove them from their intestines.[34] The doctor then explained the danger of water beads by stating that "[w]hen they're swallowed, they aren't dangerous . . . [b]ut as they sit in the intestine, they grow and can cause a blockage."[35] As the foregoing illustrates, doctors and parents alike have been attempting for years to get manufacturers' and the public's attention about the severe dangers posed by water beads.

**B.**   **Dangerous Health Hazards Associated with Water Beads & Their Impact on Children's Health and Well-Being**

20.   **Health Hazards Associated with Expanding Water Beads—Intestinal Blockage**. Water beads have inflicted a laundry list of severe health complications on children who encounter or play with them. The dangers stem from water beads' expansion properties once inside the body and the difficulty in detecting them.[36] As explained above, water beads expand when exposed to water and other fluids.[37] Once they are inside the body, they are exposed to bodily fluids or moisture, and they expand, causing bodily harm.[38] Studies show water beads expand from, for example, 2.0 mm to 9.5 mm when dry to 7.5 mm to 40.0 mm in water.[39] This expansion can

---

[33] Lauren Zakalik, *Cook Children's Reports 2 Children Ended Up in Surgery Last week After Ingesting Popular Toy Known as 'Water Beads'*, ABC 8 WFAA (June 17, 2021, 6:47 PM), https://www.wfaa.com/article/news/health/cook-childrens-2-surgery-last-week-ingesting-popular-toy-water-beads/287-95b5188e-1bac-4182-b252-feaf85408c89#:~:text=%22But%20as%20they%20sit%20in,hazards%2C%20not%20just%20water%20beads.

[34] *Id.*

[35] *Id.*

[36] *Nobody Should Lose Their Child Over a Toy*, *supra* note 2.

[37] *Are Water Beads Toxic?*, *supra* note 7.

[38] *Nobody Should Lose Their Child Over a Toy*, *supra* note 2.

[39] *A Case of Ingested Water Beads Diagnosed with Point-of-Care Ultrasound*, *supra* note 14.

obstruct the small bowel or intestines,[40] where the diameter of intestines of infants average 12mm, eight year-olds' average 23mm, and fifteen year-olds' average 23mm.[41] Even smaller water beads that do not expand to 12 or 23mm can cause intestinal blockage as many studies indicate that swallowing multiple smaller water beads can cause blockage.[42] Water beads are also more likely to exceed their maximum expansion size in water when they are ingested and pass into the intestines.[43] That is because they grow even larger when the fluid's pH increases.[44] The first part of the small intestine, called the duodenum, in particular has a high pH which further expands the water beads.[45] The result is intestinal blockage which can cause severe discomfort, persistent and excessive vomiting, dehydration, and, if the water beads are not quickly detected and surgically removed, death.[46] The treatment for intestinal blockage due to water beads can often involve an endoscopic procedure where doctors attempt to retrieve the water beads using endoscopic crushing to break up the water beads, followed by an endoscopic retrieval net to remove the water beads.[47]

---

[40] *Id.* (noting bowel size of 25 to 30mm).

[41] E.M. Haworth, et al., *Radiological measurement of small bowel calibre in normal subjects according to age*, 18 Clinical Radiology 417, 417-421 (1967), available at https://www.sciencedirect.com/science/article/abs/pii/S0009926067800515 (accessed Oct. 25, 2023) ("The calculated standard measurement for children increased from 12 mm. at 6 months to 21 mm. at 8 years and 23 mm. at 15 years of age").

[42] *Id.*; Weniko Care, *Bowel Obstruction Following Ingestion of Superabsorbent Polymers Beads: Literature Review*, 60 CLINICAL TOXICOLOGY (PA)159-167 (2022) (available at https://pubmed.ncbi.nlm.nih.gov/34651526/).

[43] *A Case of Ingested Water Beads Diagnosed with Point-of-Care Ultrasound*, *supra* note 14.

[44] *Id.*

[45] *Id.*

[46] *Chair Hoehn-Saric Statement on the Dangers That Water Beads Pose to Young Children*, CONSUMER PROD. SAFETY COMM'N (Sept. 14, 2023), https://www.cpsc.gov/About-CPSC/Chairman/Alexander-Hoehn-Saric/Statement/Chair-Hoehn-Saric-Statement-on-the-Dangers-that-Water-Beads-Pose-to-Young-Children#:~:text=If%20a%20water%20bead%20is,of%20death%20to%20the%20child.

[47] *A Case of Ingested Water Beads Diagnosed with Point-of-Care Ultrasound*, *supra* note 14.

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

21.     **Bowel Obstruction Study.** One study analyzed a set of 43 cases of bowel obstruction caused by water beads.[48] In this study, the reported symptoms were vomiting for all 43 patients, constipation (11 patients), diarrhea (1 patient), abdominal pain (1 patient), dehydration (14 patients).[49] Two patients also had a fever, and three patients developed seizures.[50] In only 10 of the 43 cases did parents or relatives inform doctors that they suspected the child ingested a water bead.[51] Indeed, radiography (also known as x-rays) "never showed evidence of foreign body ingestion."[52] Ultrasounds allowed doctors to visualize a bead in the abdominal in only 28 patients, but nonetheless only led to the correct diagnosis of intestinal blockage in just 15 of those patients.[53] To remove the water beads, endoscopy was used for 2 patients and the rest of the 41 patients required open surgery.[54] Indeed, 3 patients required a second surgery to remove water beads that were not adequately removed during the first surgery.[55] The time between the onset of symptoms and the removal of the water beads for the 43 patients ranged from 1 to 7 days.[56] And, unfortunately, 2 of the 43 patients died as a result of swallowing water beads.[57]

22.     **Ear Canal Obstruction Studies.** Ear canal obstruction is another way water beads can wreak havoc on children's well-being. Studies have found that most patients presenting with water beads lodged in their ears require surgical

---

[48] *Bowel Obstruction Following Ingestion of Superabsorbent Polymers Beads: Literature Review, supra* note 42.
[49] *Id.*
[50] *Id.*
[51] *Id.*
[52] *Id.*
[53] *Id.*
[54] *Id.*
[55] *Id.*
[56] *Id.*
[57] *Id.*

intervention.[58] Doctors have also said that if water beads become lodged in one's ear, then the ear drum could be ruptured, and one could experience permanent hearing loss.[59]

23. **Nasal Cavity Obstruction Studies.** Water beads can also become lodged in children's noses causing a host of health complications. Studies have shown that children who presented with water beads lodged in their nasal cavity experienced severe symptoms, and when water beads were lodged for prolonged periods children suffered from agitation, high fevers, and loss of appetite.[60] Treatment for nasal cavity obstruction from water beads involve children undergoing nasal endoscopy surgery where the children typically go under general anesthesia.[61]

24. **Respiratory System Obstruction Studies.** Studies have shown that water beads can also obstruct and become lodged in the lungs, which contain respiratory mucus consisting of 95% water that further expands the water beads.[62] This causes severe respiratory problems, including focal lung bronchiectasis. *Id.*

25. **NEISS Database.** The frequency at which children suffer water bead related injuries is alarming. The CPSC tracks reports of product related injuries through the National Electronic Injury Surveillance System (NEISS). The NEISS is a database maintained online that is designed to be accessible to the public and, in particular, to manufacturers. In a letter dated February 7, 2023, the CPSC discussed water bead related injuries reported to NEISS from January 1, 2017 to November 22,

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

---

[58] Habib G. Zalzal, MD, *Managing the Destructive Foreign Body: Water Beads in the Ear (A Case Series) and Literature Review*, 132 ANNALS OF OTOLOGY, RHINOLOGY & LARYNGOLOGY 1090, 1090-1095 (2023) (available at https://journals.sagepub.com/doi/abs/10.1177/00034894221133768).
[59] *Doctors Warn Parents of Dangers of Water-Absorbing Beads*, *supra* note 32.
[60] Sai-hong Han, et al., *Superabsorbent Polymer Balls as Foreign Bodies in the Nasal Cavities of Children: Our Clinical Experience*, 21 BMC PEDIATRICS 273-277 (2021) (available at https://bmcpediatr.biomedcentral.com/articles/10.1186/s12887-021-02740-x).
[61] *Id.*
[62] *Aspiration of Superabsorbent Polymer Beads Resulting in Focal Lung Damage: A Case Report*, *supra* note 15.

19

2022.[63] In that time period, 248 incident reports were filed in relation to water beads.[64] 112 were injuries from ingestion, 100 were from ear canal insertion, 35 involved nasal cavity insertion, and 1 involved an eye injury.[65] The CPSC goes on to state that, based on these numbers, that an estimated 4,500 emergency department visits occurred from 2017 through 2021 involving water bead related injuries.[66]

26.   **Incident of Child Suffering from Hearing Loss from Water Beads.** A study published in 2016 details a young girl's severe health complications arising from a water bead lodged in her ear canal.[67] The girl presented to doctors with significant hearing issues, which the doctors treated unsuccessfully for over 10 weeks.[68] During this time, no water bead was detected or reported or even thought to be the cause of the hearing complications.[69] It was not until an MRI was conducted that the water bead was revealed.[70] Surgery was then performed to remove the water bead, which had grown to 9.8 mm inside of her ear.[71] Even after removal of the water bead from the young girl's ear, she developed a profound hearing loss as a result of the water bead having been lodged in her ear.[72]

27.   **Incident of Child Suffering from Lung Damage Resulting from Water Beads.**   A report published in 2020 details a three-year-old boy's tragic encounter with water beads.[73] The boy suffered from a persistent cough, which was

---

[63] CPSC, *Letter to ASTM: Expanding Materials*, *supra* note 26.
[64] *Id.*
[65] *Id.*
[66] *Id.*
[67] Megan Sterling, DO, Jonathan Murnick, MD, PhD, Pamela Mudd, MD, MBA, *Destructive Otologic Foreign Body: Dangers of the Expanding Bead*, 142 JAMA OTOLARYNGOLOGY-HEAD & NECK SURGERY 919, 919-920 (2016) (available at https://jamanetwork.com/journals/jamaotolaryngology/fullarticle/2541395).
[68] *Id.*
[69] *Id.*
[70] *Id.*
[71] *Id.*
[72] *Id.*
[73] *Aspiration of Superabsorbent Polymer Beads Resulting in Focal Lung Damage: A Case Report*, *supra* note 15.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

the result of recurrent chest infections.[74] The boy was hospitalized on four separate occasions during one year.[75] Some hospitalizations required admission to the intensive care unit.[76] For over one year of treatment, involving multiple tests and x-rays, the doctors and medical professionals could not identify the root cause of the boy's health complication.[77] It was not until doctors performed a bronchoscopy surgery, requiring the boy to be put under general anesthesia that the doctors discovered the culprit of the boy's severe health issues: a water bead.[78] The report states that the "patient's parents were certain that the foreign body represented an Orbeez ball."[79] The doctors tried removing the water bead utilizing a retrieval basket and a flexible scope, but the water bead was broken up into smaller pieces.[80] This required individual removal of each fragment of the water bead.[81] The report highlights how the delayed onset of symptoms coupled with the inability of x-rays to detect water beads can drastically delay doctors and medical professionals from identifying water beads as the cause of the health complication.[82] The report also notes that the respiratory mucus is 95-percent water—meaning that once a water bead is swallowed and exposed to such bodily fluids, that it will likely expand.[83] The report concludes by proposing to recall all brands of water beads from the market.[84]

28. **Incident of Child Diagnosed with Toxic Brain Encephalopathy Caused by Water Bead Ingestion.** As mentioned previously, Ashley Haugen founded the non-profit organization That Water Bead Lady following her daughter's tragic and traumatic experience with water beads.[85] Ashley Haugen took her young

[74] *Id.*
[75] *Id.*
[76] *Id.*
[77] *Id.*
[78] *Id.*
[79] *Id.*
[80] *Id.*
[81] *Id.*
[82] *Id.*
[83] *Id.*
[84] *Id.*
[85] THAT WATER BEAD LADY, *supra* note 28.

CLASS ACTION COMPLAINT

daughter to the hospital after she was projectile vomiting.[86] Doctors ran countless tests but could not determine what was causing the girl's health complications.[87] The doctors concluded that in order to determine what was causing the girl's vomiting, they would need to perform an exploratory surgery that had the risk of the girl losing a bowel (which would require a colostomy bag the rest of her life) and had the risk of death.[88] The exploratory surgery was successful and the doctors found the cause of the girl's vomiting: a water bead.[89] The doctors were able to retrieve the water bead and the girl's vomiting ceased.[90] But following the procedure, the girl was not herself as she rejected her favorite foods, would not answer to her name, and had issues being in control of her body's coordination, including speech.[91] The girl's mother took her to another doctor and was informed that the girl had suffered Toxic Brain Encephalopathy (a disruption in brain function caused by toxic exposure) caused by acrylamide monomer poisoning from the water bead.[92] The girl continues to receive treatment, but her mother knows that her daughter is forever changed.[93]

29. **Incident of Child Suffering from Intestinal Blockage Due to Water Beads Where X-Rays Could Not Detect the Water Beads.** A published report in the journal of Clinical and Experimental Emergency Medicine from 2020 details a young girl's severe health complications resulting from ingesting water beads.[94] The girl was brought to the emergency department after she had been vomiting repeatedly for nine hours.[95] The doctors conducted an x-ray test which yielded no findings of

---

[86] *Id.*
[87] *Id.*
[88] *Id.*
[89] *Id.*
[90] *Id.*
[91] *Id.*
[92] *Id.*
[93] *Id.*
[94] *A Case of Ingested Water Beads Diagnosed with Point-of-Care Ultrasound*, *supra* note 14.
[95] *Id.*

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

what could be causing the vomiting.[96] The girl vomited six more times in the emergency department, and in two of the vomiting episodes water beads approximately 3 mm in size were found in the vomitus.[97] The doctors then performed an ultrasound which revealed seven 10 to 15 mm water beads obstructing the intestines.[98] The doctors then retrieved the water beads through endoscopic surgery, which resulted in eleven water beads being removed.[99]

30.    **Another Incident of Child Suffering from Intestinal Blockage Due to Water Beads Where X-Rays Could Not Detect the Water Beads.** A Today.com article details a mother's horrific recounting of her daughter's emergency department visit for water bead ingestion.[100] The mother detailed how her daughter started vomiting one day, the vomiting slowly worsened, and eventually she began vomiting every thirty minutes.[101] It was at this point that the mother took her daughter to the hospital where the doctors gave her anti-vomiting medication.[102] The mother and daughter returned home as the vomiting subsided but within seven hours the medication wore off and the vomiting continued.[103] The two rushed back to the emergency department where she was transported to a larger hospital to examine her.[104] The doctors performed an x-ray and saw nothing that explained the daughter's vomiting.[105] Finally, a computed tomography (a CT scan) was performed and the doctors could barely make out that there was something radiolucent and transparent causing a blockage.[106] The doctors suggested surgery to identify and remove the

---

[96] *Id.*
[97] *Id.*
[98] *Id.*
[99] *Id.*
[100] *Moms Have Been Warning About Water Bead Dangers. Now There's a Massive Recall*, *supra* note 30.
[101] *Id.*
[102] *Id.*
[103] *Id.*
[104] *Id.*
[105] *Id.*
[106] *Id.*

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

objects.[107] The mother recounted that all her daughter could do before the surgery was blinking and remarked that it was "just scary."[108] The doctors performed a three-hour surgery and found a singular water bead that was the cause of the daughter's severe vomiting.[109] At the time of the article, the mother stated that her daughter "has a scar from hip to hip" and that her daughter is still very weak.[110]

31.   **Incident of Child Tragically Dying from Ingesting a Water Bead.**  In 2022, a mother and father, who had five children, bought their oldest child a pack of water beads.[111] In July 2023, their 10-month-old daughter began exhibiting symptoms often related to a stomach-bug.[112] The next morning, her mother tragically found her dead in her crib.[113] It was determined that the girl died as a result of swallowing water beads.[114]   The water beads involved in this tragic incident were recalled.[115] The mother, who is also a teacher, stated that if she had known just how dangerous water beads could be she "never would've allowed [her] older kids to play with them. They never would've been in my house."[116] She went on to say "[a]t the minimum, water beads need to have the appropriate warnings about the life-threatening dangers, which is not limited choking."[117]

32.   **Creator of Orbeez Shows Remorse Over the Harm Inflicted by Water Beads.** Ron Brawer, a veteran of the toy industry, came up with the idea for

---

[107] *Id.*
[108] *Id.*
[109] *Id.*
[110] *Id.*
[111] *Nobody Should Lose Their Child Over a Toy*, *supra* note 2.
[112] *Id.*
[113] *Id.*
[114] *Id.*
[115] *Id.*
[116] Christine Rousselle, *Mom Calls for Change After Her 10-month-old Baby Dies from Swallowing a Water Bead*, N.Y. Post (Aug. 23, 2023, 10:15 AM), https://nypost.com/2023/08/23/wisconsin-mom-calls-for-change-after-her-10-month-old-baby-dies-from-swallowing-a-water-bead/.
[117] *Id.*

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

water beads to be used as children's toys.[118] Brawer was the executive who created Orbeez brand water beads and brought them to market in 2010, for Defendant Maya.[119] Brawer left the toy industry years ago, and in 2019, Defendant Spin Master bought the Orbeez brand and Products from Defendant Maya.[120] When reports recently surfaced that a child died as a result of swallowing water beads, Consumer Reports reached out to Brawer for his perspective on the danger of water beads.[121] Brawer stated: "If there are kids getting hurt by these things these days, then obviously I'm sorry to hear that . . . . I wouldn't have created this if I thought there was any chance anybody was going to get seriously hurt."[122]

C.   **Materiality of Material Omissions, Reasonable Consumer's Perception, and the Failure of the Products to Fulfill Defendants' Promises**

33.   **Consumer Demand for Water Beads and Safe Children's Toys.** In a period of just two years (between September 2021 and July 2023) water beads were purchased 3.4 million times on Amazon alone.[123] Water beads are also sold at various large retailers, including Walmart and Target.[124] Additionally, water beads are sold at smaller retailers such as teachers' supply stores since water beads can often be found as a classroom toy in many schools.[125] Consumers greatly value product safety when making purchase decisions on children's toys. One study indicates that safety is the fourth most important factor for mothers purchasing toys, behind only educational

---

[118] *Id.*; Ronald D. White, *Toy-Making is Serious Business in Southern California*, LA TIMES (Dec. 22, 2012), https://www.latimes.com/business/la-xpm-2012-dec-22-la-fi-socal-enterprise-toys-20121223-story.html.
[119] *Nobody Should Lose Their Child Over a Toy*, *supra* note 2.
[120] *Id.*
[121] *Id.*
[122] *Id.*
[123] *Id.*
[124] *Id.*
[125] *Id.*

qualities, child's personality, and child's skill.[126] The study opined that product safety would be an even higher consideration if not for parents "large amount of trust in existing U.S. Consumer Product Safety Commission regulations."[127] Defendants take advantage of consumers need for safe children's toys, combined with their demand for water beads, by materially omitting the Obstruction Danger and the Non-Detection Danger from their water beads products. Thus, influencing reasonable consumers to believe the Products meet their demand for safe children's toys, when they, in fact, pose severe and life-threatening dangers.

34.    **Material Omission on Products' Labels and Packaging.** Defendants trade on the consumers' desire for safe children's toys to convince consumers that the Products present neither the Obstruction Danger nor the Non-Detection Danger.

35.    **Design/Purpose.** The Products are water beads which are marketed as a safe children's toy designed for sensory development.  *See* **Exhibit 1** (Product Images).

36.    **Uniform Name and Product Identification.** Defendants uniformly name and prominently label the Products as "ORBEEZ." *Id.*

37.    **Material Omissions.** Defendants fail to disclose the Obstruction Danger and the Non-Detection Danger anywhere on the Products' packaging or labeling, including in particular on the front-facing panels to inform consumers that the Products pose, contrary to their design, and Reinforcing Labeling Claims, severe health and potentially life-threatening dangers. *Id.*

38.    **Reinforcing Labeling and Advertising Claims.** Defendants reinforce the Material Omissions, through its labeling, advertising imagery, and product design. Defendants include imagery in their advertising and labeling of the Products that

---

[126] Melissa N. Richards et al., *Toy Buying Today: Considerations, Information Seeking, and Thoughts about Manufacturer Suggested Age*, 68 J. APPL. DEV. PYSCHOL. 1, 6 (2021) (available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7219796/).
[127] *Id.*

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

depicts children playing with Orbeez brand water beads by throwing them haphazardly around. Given that Defendants sell the Products in packs of thousands, it is highly likely, and practically inevitable, that some of the water beads end up on the floor and in dangerous reach of young children and infants. Furthermore, the Products are very small and even the most attentive parents and caregivers are bound to lose track of some of the Products in their homes and in children's play areas as the Products are prone to scattering and are easily lost in carpets and cracks in the floor. The Products also look strikingly similar to candy and thus, by their very nature, invite children to try to swallow the Products. Defendants further emphasize the attractiveness to children to eat the Products by using such terms as "juicy" when describing the Products on its website.[128] These common features of the Products are advertised through imagery on the packaging and through in the inherent nature of the Products.

39. **Defendant's Brand Strategy of Providing "Safe" Water Beads.** Defendant Spin Master utilizes a long-standing brand strategy to prop up the Products as "safe." Defendant's website illustrates this strategy as it states for each product containing Orbeez brand water beads that "ORBEEZ ARE SAFETY TESTED" and that Orbeez are "SAFE FOR KIDS."[129]

40. Indeed, the Material Omissions are not included on each Product's primary display panel of the front label or packaging. *See* **Exhibit 1** (Product Images). Defendants deceive reasonable consumers, like Plaintiff, and lull them into a false sense of security that any dangers not disclosed on the front label or packaging are

---

[128] "These wet and juicy, colourful orbs are the sensory experience you'll want to play with again and again!" THE ONE & ONLY ORBEEZ, https://orbeezzone.com/en_us (last visited Oct. 18, 2023).

[129] "Orbeez are safety tested and won't fade, making them great kids toys, and the perfect addition to a sensory bin for kids." *Orbeez, The One and Only, Glow in the Dark Water Beads, 50,000 Beads, Safety-Tested Sensory Toys for Kids Aged 5 and Up*, THE ONE & ONLY ORBEEZ, https://orbeezzone.com/en_us/products/778988343425 (last visited Oct. 18, 2023). "SAFE FOR KIDS: Orbeez have been tested to meet international toy safety regulations and are safety-tested for play." *Id.*

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

not present with the Products. *Id.* The net-effect or net impression on consumers who view the Products with the Material Omissions is that the Products do not pose severe and life-threatening dangers, including the Obstruction Danger and the Non-Detection Danger.

41. **Orbeez Brand Water Beads Pose Severe Dangers.** The Products, Orbeez brand water beads, like any other water beads, pose severe and life-threatening dangers, including the Obstruction Danger and the Non-Detection Danger. Like other water beads, the Products are superabsorbent polymers that can expand well-beyond their starting size once exposed to water and other fluids. Once ingested or inserted in the body, the Products can cause intestinal blockage or other injuries to the nasal cavity, ear canal, and/or respiratory system. Additionally, the Products are practically invisible on x-rays, thus making the Products difficult to detect, which can lead to detrimental delay in treatment and misdiagnoses. As a result, the Products put the health and lives of children at risk of life-threatening and debilitating health conditions.

D. **Plaintiff and Reasonable Consumers Were Misled by the Material Omissions into Buying the Products, to Their Detriment**

42. **Reasonable Consumer's Perception.** The Material Omissions lead reasonable consumers, like Plaintiff, into believing that the Products do not present a risk of Obstruction Danger and Non-Detection Danger.

43. **Materiality.** The Material Omissions are material to reasonable consumers, including Plaintiff, in deciding to buy the Products—meaning, that the Material Dangers are important to consumers in deciding whether or not the Products are safe enough to buy and use for their primary purpose as a children's toy.

44. **Reliance.** The Class, including Plaintiff, reasonably relied on the Material Omissions in deciding to purchase the Products.

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

45. **Falsity.** The Material Omissions are deceptive because they mislead consumers into believing that the Products do not pose a risk of the Obstruction Danger or the Non-Detection Danger.

46. **Consumers Lack Knowledge of Falsity.** The Class members, including Plaintiff, who purchased the Products does not know and had no reason to know, at the time of purchase, that the Products pose a risk of the Material Dangers. Nothing on the Products' labeling or packaging adequately, expressly, unambiguously, or conspicuously informs consumers of the Material Dangers—specifically, that the Products pose a risk of Obstruction Danger and the Non-Detection Danger. *See* **Exhibit 1** (Product Images). That is because the Products' labeling and packaging do not contain a clear, unambiguous, and conspicuously displayed statement, that reasonable consumers are likely to notice, read, and understand to mean that, contrary to the Material Omissions and the Products' design as a children's toy, that the Products pose a risk of the Material Dangers.

47. **Defendants' Knowledge.** Defendants knew, or should have known, that the Material Omissions are false, misleading, deceptive, and unlawful, at the time that Defendants manufactured, marketed, advertised, labeled, and sold the Products using the Material Omissions to Plaintiff and the Class. Defendants intentionally and deliberately used the Material Omissions, alongside the Products' design/purpose, to cause Plaintiff and similarly situated consumers to buy the Products believing that the Products do not pose the Obstruction Danger and the Non-Detection Danger.

    a. **Knowledge of Reasonable Consumers' Perception.** Defendants knew or should have known that the Material Omissions would lead reasonable consumers into believing that the Products are safe in that they do not pose a risk of the Obstruction Danger and the Non-Detection Danger. Not only have Defendants utilized a long-standing brand strategy to identify the Products as safe children's toys, but Defendants also have an obligation under section 5 of the Federal Trade Commission Act, codified at 15 U.S.C. §§ 45, to evaluate their marketing claims from the perspective of the reasonable consumer. That means Defendants were statutorily obligated to consider whether the Material Omissions, be it in isolation or conjunction with their marketing strategy, would mislead reasonable consumers into believing that the Products are

29

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

safe and do not pose the Obstruction Danger and the Non-Detection Danger. Thus, Defendants either knew that the Material Omissions are misleading before it marketed the Products to the Class, including Plaintiff, or Defendants would have known that that they were deceptive had it complied with their statutory obligations.

b.   **Knowledge of Falsity.** Defendants manufactured and marketed the Products with the Material Omissions, but Defendants opted to make Products that pose a risk of the Material Dangers. Specifically, Defendants advertised, labeled, and packaged the Products with the Obstruction Omission and the Non-Detection Omission, but chose to manufacture Products that pose a risk of the Obstruction Danger and the Non-Detection Danger.

(1) ***First***, Defendants, as manufacturers of children's toys like the Products, are required under 16 C.F.R. § 1250.2 to comply with safety provisions of ASTM F963-17. Defendants are also required to certify in a written Children's Product Certificate the results of required third-party testing under ASTM F963-17.

(2) ***Second***, Defendants are also required to certify that the children's products conform to product safety rules.[130] To adequately attest to the Products' safety, Defendants should have stayed informed of the Products' safety risks, including keeping apprised of scientific literature and the regulatory databases that compile hundreds of complaints and incident reports regarding the Obstruction Danger and Non-Detection Danger for water beads, dating back to 2017 and beyond.

(3) ***Third***, the Child Product Safety Council, Consumer Product Safety Council, and numerous federal and state laws regulating the safety of consumer goods and, in particular, children's toys, impose statutory obligations on Defendants and provide regulatory guidance for Defendants, as manufacturers of children's toys, to evaluate the safety of their products and children's toys for reasonably foreseeable uses and misuses. Water beads look like candy, making them attractive to children and likely to be swallowed. Water beads are also tiny and are sold in large quantities (hundreds or thousands), making them difficult to monitor and keep out of reach of children

---

[130] *Children's Product Certificate (CPC)*, CONSUMER PROD. SAFETY COMM'N, https://www.cpsc.gov/Testing-Certification/Childrens-Product-Certificate-CPC (last visited Oct. 18, 2023).

CLASS ACTION COMPLAINT

and infants. Young children, particularly infants and toddlers, are well known to place objects in their mouth (referred to as PICA behavior), making them likely to be swallowed or aspirated. Likewise, they frequently place objects in their ears, nose, and otherwise do not recognize the danger of doing so. Had Defendants exercised reasonable care and complied with their statutory obligations to identify and evaluate reasonably foreseeable risks entailed in the use or misuse of water beads—such as children, including infants, swallowing water beads, aspirating water beads, or inserting water beads into their ears or nose, notwithstanding the most vigilant parent or caregiver supervision, Defendants would have recognized the heightened and reasonably foreseeable danger of water beads being ingested, aspirated, or inserted into infants and children's bodies.

(4) **Fourth**, Defendants knew or should have known that the water beads expand when exposed to moisture and liquids with a high pH as Defendants marketed the water beads for that very purpose. Accordingly, Defendants knew or should have known that the Products pose a risk of the Obstruction Danger based on the reasonably foreseeable misuses and deliberately designed expansion of water beads.

(5) **Fifth**, Defendants knew or should have known that the water beads pose a risk of the Non-Detection Danger as the swelling of water beads from surrounding bodily fluids, by design, make them difficult to detect on scans and radiographs. Defendants cannot feign ignorance as a multitude of complaints and incident reports from an exceptionally high number of hospitalizations have been repeatedly logged in the publicly available databases, dating back to 2017 and earlier, that are not only designed to provide a resource for manufacturers to comply with their statutory duties, but also document repeated incidents of the Obstruction Danger and Non-Detection Danger coming to fruition. For example, the NEISS system tracks incidents involving children's toys, and it can be filtered to focus on water beads related incidents, or the type of injury (i.e., ingestion or insertion related), and (as reported by the CPSC) it contains water bead related incident reports dating all the way

back to January 2017.[131] The NEISS system was therefore tracking water bead related incidents that Defendants should have kept apprised of since at least as far back as 2017.

(6) **Sixth**, child and product safety advocacy groups and doctors have repeatedly and publicly warned water beads manufacturers of the severe and life-threatening dangers of water beads, including the Obstruction and Non-Detection Dangers. Defendants knew or should have known about reports from governmental bodies focused on product safety (such as the Consumer Product Safety Commission), institutions dedicated to children's safety (such as the American Academy of Pediatrics), various children safety organizations (such as HealthyChildrens.org), and various news outlets that report on consumers' interactions with products. This includes, for example, the American Academy of Pediatrics (AAP) published report in 2013, regarding the recall of certain water beads products that emphasized that the water beads "can cause intestinal obstructions inside a child's body, resulting in severe pain, vomiting, dehydration, or death. The toys do not show up on an X-ray, and surgery must be used to remove them."[132] The AAP put out a similar recall report in 2014, stating that "[t]hese soft, colorful products can be mistaken by a child for candy. When swallowed, they can expand inside a child's body and block the intestines, which can be uncomfortable, cause vomiting and dehydration, and can be life-threatening."[133] In 2016 the AAP published an article quoting a pediatric gastroenterologist saying that water beads "can grow bigger as they pass through the intestines, ultimately paving the way for obstruction."[134] That article also stated that the "beads may not be visible on X-rays."[135] In 2020, an article was published in a journal for the Clinical and Experimental Emergency Medicine that detailed how "ingestion of water beads

---

[131] CPSC, *Letter to ASTM: Expanding Materials*, *supra* note 26.

[132] American Academy of Pediatrics (2013), *supra* note 5.

[133] American Academy of Pediatrics (2014), *supra* note 5.

[134] Trisha Korioth, *Parent Plus: Water-Absorbing Beads Can be Harmful if Swallowed, Put in Ear*, AMERICAN ACAD. PEDIATRICS (Mar. 22, 2016), https://publications.aap.org/aapnews/news/12513/Parent-Plus-Water-absorbing-beads-can-be-harmful?autologincheck=redirected.

[135] *Id.*

CLASS ACTION COMPLAINT

is prone to delayed diagnosis and consequent intestinal obstruction."[136] In February 2023, the CPSC published a letter which detailed the frequent water bead related injuries tracked by its NEISS system, stating that "[m]any incidents of water bead ingestion lead to bowel obstruction, requiring surgical intervention, while ear insertion of water beads leads to surgery, damage to the structures of the ear, and hearing loss."[137] Across the world, consumer governmental bodies have expressed concerns about water beads' dangers, as evidenced by the Australian Competition and Consumer Commission in 2015 stating that "[o]nce ingested, just one ball can expand inside a child's a body and cause intestinal obstruction, vomiting, severe discomfort and dehydration and may need to be surgically removed. We urge businesses who are supplying these products as toys to immediately stop."[138] There have also been an abundance of news articles detailing parents' and doctors' concerns about the safety of water beads dating before and during the Class Period.[139] These sources are just a sampling of the multitude of resources that were available to Defendants before and during the Class Period. Thus, Defendants knew or should have known of the Products' Obstruction Danger and the Non-Detection Danger at the outset of the Class Period, giving rise to Defendants' duty to disclose the Material Dangers to the Class, including Plaintiff, before she purchased the Products. These are not random or isolated reports. A mere search online for "water beads safety," "water beads injuries," or similar terms, reveal a vast number of reports from reputable organizations, some of which are outlined

---

[136] *A Case of Ingested Water Beads Diagnosed with Point-of-Care Ultrasound*, *supra* note 14.

[137] CPSC, *Letter to ASTM: Expanding Materials*, *supra* note 26.

[138] *ACCC Warns of Dangers of Water Expanding Balls to Kids*, AUSTRL. COMPETITION & CONSUMER COMM'N (Mar. 6, 2015), https://www.accc.gov.au/media-release/accc-warns-of-dangers-of-water-expanding-balls-to-kids#:~:text=%E2%80%9COnce%20ingested%2C%20just%20one%20ball,removed%2C%E2%80%9D%20Ms%20Rickard%20said.

[139] *Cook Children's Reports 2 Children Ended Up in Surgery Last week After Ingesting Popular Toy Known as 'Water* Beads', *supra* note 33; *Doctors Warn Parents of Dangers of Water-Absorbing Beads*, *supra* note 32; *Water Beads: Harmful if Swallowed, Put in Ears*, *supra* note 4; THAT WATER BEAD LADY, *supra* note 28; *Nobody Should Lose Their Child Over a Toy*, *supra* note 2; *Moms Have Been Warning About Water Bead Dangers. Now There's a Massive Recall*, *supra* note 30.

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

above, that repeatedly discuss and warn of the Material Dangers of water beads. If Defendants had exercised a modicum of effort to comply with their statutory obligation to evaluate the safety of their children's toys, particularly given the Products' reasonably foreseeable risks of misuse and their intended design to absorb and expand in moisture, Defendants would have known of the Material Dangers.

c. **Knowledge of Materiality.** Defendants knew or should have known of the Material Omissions' importance to consumers.

(1) ***First***, safety is of paramount importance in any consumer's decision to buy children's toys.[140] Further, the importance of safety and warnings escalate the more likely young children will be exposed or drawn to the toys (here, tiny candy-like water beads).[141] Indeed, the importance of safety skyrockets when the toy's design makes them difficult to supervise and keep out reach of small children (here, tiny sprinkle- or marble-sized toys sold in packs of hundreds and thousands). Indeed, the importance of children's toys safety is illustrated by federal standards and regulations, such as ASTM F963 (acknowledging the danger of expanding materials toys, such as water beads), 16 C.F.R. § 1500.18, (banning certain children's toys from the market for being too dangerous), and 16 C.F.R. § 1250 (requiring third-party testing for children's toys compliant with ASTM F963-17). Beyond federal standards and regulations, common sense dictates that consumers value toys that do not pose unknown life-threatening dangers to children.

(2) ***Second***, Defendants were aware of the importance of safety to consumers because Defendants touted the purported safety of the Products through their advertising and labeling with such statements as "safe for kids" or "safety tested."[142] The use of such statements to market the Products demonstrates that Defendants were aware that safety concerns about the Products were important to consumers.

(3) ***Third***, it is a matter of common sense that safety for

---

[140] *Toy Buying Today: Considerations, Information Seeking, and Thoughts about Manufacturer Suggested*, *supra* note 126.

[141] *See id.* at 9 (discussing how the safety implications are greater for younger children).

[142] THE ONE & ONLY ORBEEZ, *supra* note 129; *Orbeez, The One and Only, Glow in the Dark Water Beads, 50,000 Beads, Safety-Tested Sensory Toys for Kids Aged 5 and Up*, *supra* note 129.

children's toys, like the Products, are important to consumers. In particular, Defendants knew or should have known that the risk of life-threatening and severe injuries, such as the Material Dangers, would affect whether consumers purchased the Products.

d.   **Defendants' Continued Deception, Despite Its Knowledge.** Defendants, as manufacturers and marketers of the Products, had exclusive control over the disclosure of the Material Omissions on the Products' labels, packaging, and advertisements—i.e., Defendants readily and easily could have disclosed the Material Dangers on the Products' advertisements, packaging, and labels. However, despite Defendants' knowledge that the Material Omissions lead consumers to believe that the Products do not pose a risk of the Obstruction Danger or Non-Detection Danger, Defendants' knowledge that the Products do pose a risk of the Obstruction and Non-Detection Dangers, and Defendants' knowledge that the Material Omissions are important to consumers in deciding to buy the Products (as outlined above), Defendants deliberately chose to market the Products with the Material Omissions thereby misleading consumers into buying or overpaying for the Products. Thus, Defendants knew, or should have known, at all relevant times, that the Material Omissions mislead reasonable consumers, such as Plaintiff and the Class, into buying the Products to attain the product-attributes that Defendants falsely advertised and warranted—to wit, that the Products do not pose a risk of the Material Dangers.

48.   **Duty to Disclose Material Omission.** At all relevant times, Defendants had an obligation to disclose the Material Omissions—that the Products do pose a risk of the Obstruction Danger and the Non-Detection Danger—to consumers, including Plaintiff and the Class, prior to their purchase of the Products. Defendants not only knew or should have known that reasonable consumers would perceive Material Omissions to mean that the Products do not pose a risk of the Obstruction Danger and the Non-Detection Danger, but Defendants also knew or should have known that this attribute was material to consumers in deciding to buy the Products. Defendants further knew or should have known that the reasonable consumer's perception of the Material Omissions is false—i.e., that the Products do pose a risk of the Obstruction Danger and the Non-Detection Danger.

49.   **Detriment.** Plaintiff and similarly situated consumers would not have purchased the Products or would not have overpaid a price premium for them, if they had known that the Material Omissions were false because, contrary the deceptive

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

safety perception engendered by the Material Omissions as claimed, promised, warranted, advertised, and/or represented, the Products pose a risk of the Material Dangers. Accordingly, based on Defendants' Material Omissions, reasonable consumers, including Plaintiff, purchased Products that she would not have purchased, and/or overpaid for Products free of the Material Dangers, to their detriment.

### E.   The Products are Substantially Similar

50.   As described herein, Plaintiff purchased the Gamino Purchased Products. The additional Products identified *supra* at ¶ 7 (collectively, the "**Unpurchased Products**") are substantially similar to the Purchased Products.

a. **Defendants.** All Products are manufactured, sold, marketed, advertised, labeled, and packaged by Defendants.

b. **Brand.** All Products are sold under the same brand name: Orbeez.

c. **Marketing Demographics.** All Products are marketed directly to consumers for use as children's toys.

d. **Purpose.** All Products are water beads products designed and marketed to be safe children's toys.

e. **Use.** All Products are used in the same manner—children play with them, and water can be added to expand the water beads.

f. **Misrepresentations and omissions.** All Products contain one or more Material Omissions on their packaging and labeling.

g. **Packaging.** All Products are packaged in packaging that is similar in all material aspects.

h. **Key Attributes.** All Products pose severe and life-threatening dangers—specifically, the Obstruction Danger and the Non-Detection Danger.

i. **Misleading Effect.** The misleading effect of the Material Omissions on consumers is the same for all Products—consumers over-pay or otherwise buy children's toys that are free of the Obstruction Danger and Non-Detection Danger, but all consumers receive children's toys that pose a risk of the Obstruction Danger and Non-Detection Danger. Had consumers known of the Material Dangers, they would not have bought the Products or would not have paid as much for them.

**F.** **No Adequate Remedy at Law**

51. **No Adequate Remedy at Law.** Plaintiff and members of the Class are entitled to equitable relief as no adequate remedy at law exists.

a. **Broader Statutes of Limitations.** The statutes of limitations for the causes of action pled herein vary. The limitations period is four years for claims brought under the UCL, which is one year longer than the statutes of limitations under the FAL and CLRA. In addition, the statutes of limitations vary for certain states' laws for breach of warranty and unjust enrichment/restitution, between approximately 2 and 6 years. Thus, California Subclass members who purchased the Products more than 3 years prior to the filing of the complaint will be barred from recovery if equitable relief were not permitted under the UCL. Similarly, Nationwide Class members who purchased the Products prior to the furthest reach-back under the statute of limitations for breach of warranty, will be barred from recovery if equitable relief were not permitted for restitution/unjust enrichment.

b. **Broader Scope of Conduct.** In addition, the scope of actionable misconduct under the unfair prong of the UCL is broader than the other causes of action asserted herein. It includes, for example, Defendants' overall unfair marketing scheme to promote and brand the Products with the Material Omissions, across a multitude of media platforms, including the Products' labels and packaging, over a long period of time, in order to gain an unfair advantage over competitor products and to take advantage of consumers' desire for products that comport with the Material Omissions. The UCL also creates a cause of action for violations of law (such as statutory or regulatory requirements and court orders related to similar representations and omissions made on the type of products at issue). Thus, Plaintiff and Class members may be entitled to restitution under the UCL, while not entitled to damages under other causes of action asserted herein (e.g., the FAL requires actual or constructive knowledge of the falsity; the CLRA is limited to certain types of plaintiffs (an individual who seeks or acquires, by purchase or lease, any goods or services for personal, family, or household purposes) and other statutorily enumerated conduct). Similarly, unjust enrichment/restitution is broader than breach of warranty. For example, in some states, breach of warranty may require privity of contract or pre-lawsuit notice, which are not typically required to establish unjust enrichment/restitution. Thus, Plaintiff and Class members may be entitled to recover under unjust enrichment/restitution, while not entitled to damages under breach of warranty, because they purchased the products from third-party retailers or did not provide adequate notice of a breach prior to the commencement of this action.

c. **Injunctive Relief to Cease Misconduct and Dispel Misperception.** Injunctive relief is appropriate on behalf of Plaintiff and members of the Class because Defendants continue to misrepresent the Products with the Material Omissions. Injunctive relief is necessary to prevent Defendants from continuing to engage in the unfair, fraudulent, and/or unlawful conduct described herein and to prevent future harm—none of which can be achieved through available legal remedies (such as

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

monetary damages to compensate past harm). Further, injunctive relief, in the form of affirmative disclosures is necessary to dispel the public misperception about the Products that has resulted from years of Defendants' unfair, fraudulent, and unlawful marketing efforts. Such disclosures would include, but are not limited to, publicly disseminated statements providing accurate information about the Products' true nature; and/or requiring prominent qualifications and/or disclaimers on the Products' front label concerning the Products' true nature. An injunction requiring affirmative disclosures to dispel the public's misperception and prevent the ongoing deception and repeat purchases based thereon, is also not available through a legal remedy (such as monetary damages). In addition, Plaintiff is *currently* unable to accurately quantify the damages caused by Defendants' future harm, because discovery and Plaintiff's investigation has not yet completed, rendering injunctive relief all the more necessary. For example, because the court has not yet certified any class, the following remains unknown: the scope of the class, the identities of its members, their respective purchasing practices, prices of past/future Product sales, and quantities of past/future Product sales.

d. **Public Injunction.** Further, because a "public injunction" is available under the UCL, damages will not adequately "benefit the general public" in a manner equivalent to an injunction.

e. **California vs. Nationwide Class Claims**. Violations of the UCL, FAL, and CLRA are claims asserted on behalf of Plaintiff and the California Subclass against Defendants, while breach of warranty and unjust enrichment/restitution are asserted on behalf of Plaintiff and the Nationwide Class. Dismissal of farther-reaching claims, such as restitution, would bar recovery for non-California members of the Class. In other words, legal remedies available or adequate under the California-specific causes of action (such as the UCL, FAL, and CLRA) have no impact on this Court's jurisdiction to award equitable relief under the remaining causes of action asserted on behalf of non-California putative class members.

f. **Procedural Posture—Incomplete Discovery & Pre-Certification.** Lastly, this is an initial pleading in this action, and discovery has not yet commenced and/or is at its initial stages. No class has been certified yet. No expert discovery has commenced and/or completed. The completion of fact/non-expert and expert discovery, as well as the certification of this case as a class action, are necessary to finalize and determine the adequacy and availability of all remedies, including legal and equitable, for Plaintiff's individual claims and any certified class or subclass. Plaintiff therefore reserve Plaintiff's right to amend this complaint and/or assert additional facts that demonstrate this Court's jurisdiction to order equitable remedies where no adequate legal remedies are available for Plaintiff and/or any certified class or subclass. Such proof, to the extent necessary, will be presented prior to the trial of any equitable claims for relief and/or the entry of an order granting equitable relief.

## VI.   CLASS ACTION ALLEGATIONS

52.   **Class Definition.** Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of themselves and all others similarly situated as members of the Class defined as follows:

> All residents of the United States who, within the applicable statute of limitations periods, purchased the Products, with the Material Omission on the Products' labels or packaging, for purposes other than resale ("**Nationwide Class**"); and
>
> All residents of California who, within four years prior to the filing of this action, purchased the Products, with the Material Omission on the Products' labels or packaging, for purposes other than resale ("**California Subclass**").

(the "Nationwide Class" and "California Subclass" are collectively referred to as the "**Class**").

53.   **Class Definition Exclusions.** Excluded from the Class are: (i) Defendants, their assigns, successors, and legal representatives; (ii) any entities in which Defendants have controlling interests; (iii) federal, state, and/or local governments, including, but not limited to, their departments, agencies, divisions, bureaus, boards, sections, groups, counsels, and/or subdivisions; and (iv) any judicial officer presiding over this matter and person within the third degree of consanguinity to such judicial officer.

54.   **Reservation of Rights to Amend the Class Definition.**, Plaintiff reserves the right to amend or otherwise alter the class definition presented to the Court at the appropriate time in response to facts learned through discovery, legal arguments advanced by Defendants, or otherwise.

55.   **Numerosity.** Members of the Class are so numerous that joinder of all members is impracticable. Upon information and belief, the Nationwide Class consists of tens of thousands of purchasers (if not more) dispersed throughout the United States, and the California Subclass likewise consists of thousands of purchasers (if not more) dispersed throughout the State of California. Accordingly, it would be impracticable to join all members of the Class before the Court.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

56.     **Common Questions Predominate.** There are numerous and substantial questions of law or fact common to all members of the Class that predominate over any individual issues.  Included within the common questions of law or fact are:

a.     Whether Defendants engaged in unlawful, unfair or deceptive business practices by advertising and selling the Products;

b.     Whether Defendants' conduct of advertising and selling the Products omitting that they present severe, and potentially life-threatening dangers to children constitutes an unfair method of competition, or unfair or deceptive act or practice, in violation of Civil Code section 1750, *et seq.*;

c.     Whether Defendants used deceptive representations and omissions in connection with the sale of the Products in violation of Civil Code section 1750, *et seq.*;

d.     Whether Defendants represented that the Products have characteristics or quantities that they do not have in violation of Civil Code section 1750, *et seq.*;

e.     Whether Defendants advertised the Products with intent not to sell them as advertised in violation of Civil Code section 1750, *et seq.*;

f.     Whether Defendants' labeling and advertising of the Products are misleading in violation of California Business and Professions Code Sections 17500, *et seq.*;

g.     Whether Defendants knew or by the exercise of reasonable care should have known their labeling and advertising was and is misleading in violation of California Business and Professions Code Sections 17500, *et seq.*;

h.     Whether Defendants' conduct is an unfair business practice within the meaning of California Business and Professions Code Sections 17200, *et seq.*;

i.     Whether Defendants' conduct is a fraudulent business practice within the meaning of California Business and Professions Code Sections 17200, *et seq.*;

j.     Whether Defendants' conduct is an unlawful business practice within the meaning of California Business and Professions Code Sections 17200, *et seq.*;

k.     Whether Plaintiff and the Class paid more money for the Products than they actually received;

l.     How much more money Plaintiff and the Class paid for the Products than they actually received;

m.     Whether Defendants' conduct constitutes breach of warranty;

n.     Whether Plaintiff and the Class are entitled to injunctive relief; and

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

40
CLASS ACTION COMPLAINT

o.    Whether Defendants were unjustly enriched by their unlawful conduct.

57.    **Predominance**. The common questions of law and fact predominate over questions that affect only individual Class Members.

58.    **Typicality.**   Plaintiff's claims are typical of the claims of the Class Members they seek to represent because Plaintiff, like the Class Members, purchased Defendants' misleading and deceptive Products.  Defendants' unlawful, unfair and/or fraudulent actions concern the same business practices described herein irrespective of where they occurred or were experienced.  Plaintiff and the Class sustained similar injuries arising out of Defendants' conduct.  Plaintiff's and Class Members' claims arise from the same practices and course of conduct and are based on the same legal theories.

59.    **Adequacy.** Plaintiff is an adequate representative of the Class she seeks to represent because their interests do not conflict with the interests of the Class Members Plaintiff seeks to represent. Plaintiff will fairly and adequately protect Class Members' interests and have retained counsel experienced and competent in the prosecution of complex class actions, including complex questions that arise in consumer protection litigation.

60.    **Ascertainability.** Class Members can easily be identified by an examination and analysis of the business records regularly maintained by Defendants, among other records within Defendants' possession, custody, or control. Additionally, further Class Member data can be obtained through additional third-party retailers who retain customer records and order histories.

61.    **Superiority and Substantial Benefit.** A class action is superior to other methods for the fair and efficient adjudication of this controversy, since individual joinder of all members of the Class is impracticable and no other group method of adjudication of all claims asserted herein is more efficient and manageable for at least the following reasons:

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

a. The claims presented in this case predominate over any questions of law or fact, if any exist at all, affecting any individual member of the Class;

b. Absent a Class, the members of the Class will continue to suffer damage and Defendants' unlawful conduct will continue without remedy while Defendants profit from and enjoy their ill-gotten gains;

c. Given the size of individual Class Members' claims, few, if any, Class Members could afford to or would seek legal redress individually for the wrongs Defendants committed against them, and absent Class Members have no substantial interest in individually controlling the prosecution of individual actions;

d. When the liability of Defendants has been adjudicated, claims of all members of the Class can be administered efficiently and/or determined uniformly by the Court; and

e. This action presents no difficulty that would impede its management by the Court as a class action, which is the best available means by which Plaintiff and Class Members can seek redress for the harm caused to them by Defendants.

62. **Inconsistent Rulings.** Because Plaintiff seeks relief for all members of the Class, the prosecution of separate actions by individual members would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for Defendants.

63. **Injunctive/Declaratory Relief.** The prerequisites to maintaining a class action for injunctive or equitable relief are met as Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or declaratory relief with respect to the Class as a whole.

64. **Manageability.** Plaintiff and Plaintiff's counsel are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

## VII.  CAUSES OF ACTION

### COUNT ONE

### Violation of California Unfair Competition Law

### (Cal. Bus. & Prof. Code §§ 17200, *et seq.*)

### (*On Behalf of the California Subclass*)

65.  **Incorporation by Reference.** Plaintiff re-alleges and incorporates by reference all allegations contained in this complaint, as though fully set forth herein.

66.  **California Subclass.** This cause of action is brought pursuant to California Business and Professions Code Sections 17200, *et seq.*, on behalf of Plaintiff and a California Subclass who purchased the Products within the applicable statute of limitations.

67.  **The UCL.** California Business and Professions Code Sections 17200, *et seq.* (the **"UCL"**) prohibits unfair competition and provides, in pertinent part, that "unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising."

68.  **False Advertising Claims.** Defendants, in their advertising and packaging of the Products, made misleading statements and fraudulent omissions regarding the quality and characteristics of the Products—specifically, the Material Omissions—despite the fact the Products do pose severe and potentially life-threatening dangers, including the Obstruction Danger and the Non-Detection Danger. Such omissions appear on the label and packaging of the Products, which are sold at retail stores and point-of-purchase displays.

69.  **Defendants' Deliberately Fraudulent Marketing Scheme.** Defendants do not have any reasonable basis for the omissions about the Products made in Defendants' advertising and on Defendants' packaging or labeling because the Products do pose severe and life-threatening dangers, including the Obstruction Danger and the Non-Detection Danger. Defendants knew and know that the Products pose severe and life-threatening dangers, including the Obstruction Danger and Non-

Detection Danger, though Defendants intentionally advertised and marketed the Products to deceive reasonable consumers that the Products do not pose such severe dangers.

70. **Misleading Advertising Claims Cause Purchase of Products.** Defendants' labeling and advertising of the Products led to, and continues to lead to, reasonable consumers, including Plaintiff, believing that the Products do not pose severe and life-threatening dangers, including the Obstruction Danger and the Non-Detection Danger.

71. **Injury in Fact.** Plaintiff and the California Subclass has suffered injury in fact and have lost money or property as a result of and in reliance upon the Material Omissions—namely Plaintiff and the California Subclass lost the purchase price for the Products they bought from the Defendants.

72. **Conduct Violates the UCL.** Defendants' conduct, as alleged herein, constitutes unfair, unlawful, and fraudulent business practices pursuant to the UCL. The UCL prohibits unfair competition and provides, in pertinent part, that "unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising."  Cal. Bus & Prof. Code § 17200. In addition, Defendants' use of various forms of advertising media to advertise, call attention to, or give publicity to the sale of goods or merchandise that are not as represented in any manner constitutes unfair competition, unfair, deceptive, untrue or misleading advertising, and an unlawful business practice within the meaning of California Business and Professions Code Sections 17200 and 17531, which advertisements have deceived and are likely to deceive the consuming public, in violation of California Business and Professions Code Section 17200.

73. **No Reasonably Available Alternatives/Legitimate Business Interests.** Defendants failed to avail themselves of reasonably available, lawful alternatives to further their legitimate business interests.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

74. **Business Practice.** All of the conduct alleged herein occurred and continues to occur in Defendants' business. Defendants' wrongful conduct is part of a pattern, practice and/or generalized course of conduct, which will continue on a daily basis until Defendants voluntarily alters their conduct or Defendants is otherwise ordered to do so.

75. **Injunction.** Pursuant to California Business and Professions Code Sections 17203 and 17535, Plaintiff and the members of the California Subclass seek an order of this Court enjoining Defendants from continuing to engage, use, or employ their practice of labeling and advertising the sale and use of the Products. Likewise, Plaintiff and the members of the California Subclass seek an order requiring Defendants to disclose such misrepresentations and omissions, and to preclude Defendants' failure to disclose the existence and significance of said misrepresentations.

76. **Causation/Damages.** As a direct and proximate result of Defendants' misconduct in violation of the UCL, Plaintiff and members of the California Subclass were harmed in the amount of the purchase price they paid for the Products. Further, Plaintiff and members of the California Subclass have suffered and continue to suffer economic losses and other damages including, but not limited to, the amounts paid for the Products, and any interest that would have accrued on those monies, in an amount to be proven at trial. Accordingly, Plaintiff seeks a monetary award for violation of the UCL in damages, restitution, and/or disgorgement of ill-gotten gains to compensate Plaintiff and the California Subclass for said monies, as well as injunctive relief to enjoin Defendants' misconduct to prevent ongoing and future harm that will result.

77. **Punitive Damages.** Plaintiff seeks punitive damages pursuant to this cause of action for violation of the UCL on behalf of Plaintiff and the California Subclass. Defendants' unfair, fraudulent, and unlawful conduct described herein constitutes malicious, oppressive, and/or fraudulent conduct warranting an award of

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

punitive damages as permitted by law.  Defendants' misconduct is malicious as Defendants acted with the intent to cause Plaintiff and consumers to pay for Products that they were not, in fact, receiving.  Defendants willfully and knowingly disregarded the rights of Plaintiff and consumers as Defendants were, at all times, aware of the probable dangerous consequences of their conduct and deliberately failed to avoid misleading consumers, including Plaintiff.  Defendants' misconduct is oppressive as, at all relevant times, said conduct was so vile, base, and/or contemptible that reasonable people would look down upon it and/or otherwise would despise such corporate misconduct.  Said misconduct subjected Plaintiff and consumers to cruel and unjust hardship in knowing disregard of their rights.  Defendants' misconduct is fraudulent as Defendants intentionally misrepresented and/or concealed material facts with the intent to deceive Plaintiff and consumers.  The wrongful conduct constituting malice, oppression, and/or fraud was committed, authorized, adopted, approved, and/or ratified by officers, directors, and/or managing agents of Defendants.

### *"Unfair" Prong*

78.  **Unfair Standard.** Under the UCL, a challenged activity is "unfair" when "any injury it causes outweighs any benefits provided to consumers and the injury is one that the consumers themselves could not reasonably avoid." *Camacho v. Auto Club of Southern California,* 142 Cal. App. 4th 1394, 1403 (2006).

79.  **Injury.** Defendants' action of mislabeling the Products with the Material Omissions does not confer any benefit to consumers; rather, doing so causes injuries to consumers, who do not receive products commensurate with their reasonable expectations, overpay for the Products, receive Products of lesser standards than what they reasonably expected to receive, and are exposed to increased health risks. Consumers cannot avoid any of the injuries caused by Defendants' deceptive labeling and advertising of the Products. Accordingly, the injuries caused by Defendants' deceptive labeling and advertising outweigh any benefits.

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

80. **Balancing Test.** Some courts conduct a balancing test to decide if a challenged activity amounts to unfair conduct under California Business and Professions Code Section 17200. They "weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim." *Davis v. HSBC Bank Nevada, N.A.,* 691 F.3d 1152, 1169 (9th Cir. 2012).

81. **No Utility.** Here, Defendants' conduct of labeling the Products with the Material Omissions when the Products pose severe and life-threatening dangers, including the Obstruction Danger and the Non-Detection Danger, has no utility and financially harms purchasers. Thus, the utility of Defendants' conduct is vastly outweighed by the gravity of harm.

82. **Legislative Declared Policy.** Some courts require that "unfairness must be tethered to some legislative declared policy or proof of some actual or threatened impact on competition." *Lozano v. AT&T Wireless Servs. Inc.,* 504 F. 3d 718, 735 (9th Cir. 2007).

83. **Unfair Conduct.** Defendants' labeling and advertising of the Products, as alleged herein, is deceptive, misleading, and unreasonable, and constitutes unfair conduct. Defendants knew or should have known of their unfair conduct. Defendants' misrepresentations and omissions constitute an unfair business practice within the meaning of California Business and Professions Code Section 17200.

84. **Reasonably Available Alternatives.** There existed reasonably available alternatives to further Defendants' legitimate business interests, other than the conduct described herein. Defendants could have refrained from labeling the Products with the Material Omissions.

85. **Defendants' Wrongful Conduct.** All of the conduct alleged herein occurs and continues to occur in Defendants' business. Defendants' wrongful conduct is part of a pattern or generalized course of conduct repeated on thousands of occasions daily.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

86. **Injunction.** Pursuant to California Business and Professions Code Section 17203, Plaintiff and the California Subclass seek an order of this Court enjoining Defendants from continuing to engage, use, or employ their practices of labeling the Products with the Material Omissions.

87. **Causation/Damages.** Plaintiff and the California Subclass have suffered injury in fact, have lost money and were exposed to increased health risks as a result of Defendants' unfair conduct. Plaintiff and the California Subclass paid an unwarranted premium for these Products. Specifically, Plaintiff and the California Subclass paid for Products that are safe children's toys that do not pose severe and life-threatening dangers, including the Obstruction Danger and the Non-Detection Danger. Plaintiff and the California Subclass would not have purchased the Products, or would have paid substantially less for the Products, if they had known that the Products' advertising and labeling were deceptive. Accordingly, Plaintiff seeks damages, restitution and/or disgorgement of ill-gotten gains pursuant to the UCL.

### *"Fraudulent" Prong*

88. **Fraud Standard.** The UCL considers conduct fraudulent (and prohibits said conduct) if it is likely to deceive members of the public. *Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 1267 (1992).

89. **Fraudulent & Material Omissions.** Defendants used the Material Omissions with the intent to sell the Products to consumers, including Plaintiff and the California Subclass. The Material Omissions are deceptive, and Defendants knew, or should have known, of their deception. The Material Omissions are likely to mislead consumers into purchasing the Products because they are material to the average, ordinary, and reasonable consumer.

90. **Fraudulent Business Practice.** As alleged herein, the misrepresentations and omissions by Defendants constitute a fraudulent business practice in violation of California Business and Professions Code Section 17200.

CLASS ACTION COMPLAINT

91. **Reasonable and Detrimental Reliance.** Plaintiff and the California Subclass reasonably and detrimentally relied on the material and deceptive Material Omissions to their detriment in that they purchased the Products.

92. **Reasonably Available Alternatives.** Defendants had reasonably available alternatives to further their legitimate business interests, other than the conduct described herein. Defendants could have refrained from labeling the Products with the Material Omissions.

93. **Business Practice.** All of the conduct alleged herein occurs and continues to occur in Defendants' business. Defendants' wrongful conduct is part of a pattern or generalized course of conduct.

94. **Injunction.** Pursuant to California Business and Professions Code Section 17203, Plaintiff and the California Subclass seek an order of this Court enjoining Defendants from continuing to engage, use, or employ their practice of labeling the Products with the Material Omissions.

95. **Causation/Damages.** Plaintiff and the California Subclass have suffered injury in fact and have lost money as a result of Defendants' fraudulent conduct. Plaintiff paid an unwarranted premium for the Products.  Specifically, Plaintiff and the California Subclass paid for Products with the attribute of being a safe children's toy that did not pose severe and life-threatening dangers when, in fact, the Products do pose severe and life-threatening dangers, including the Obstruction Danger and the Non-Detection Danger. Plaintiff and the California Subclass would not have purchased the Products if they had known the truth. Accordingly, Plaintiff seeks damages, restitution, and/or disgorgement of ill-gotten gains pursuant to the UCL.

### ***"Unlawful" Prong***

96. **Unlawful Standard.** The UCL identifies violations of other laws as "unlawful practices that the unfair competition law makes independently actionable." *Velazquez v. GMAC Mortg. Corp.,* 605 F. Supp. 2d 1049, 1068 (C.D. Cal. 2008).

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

97. **Violations of CLRA and FAL.** Defendants' labeling of the Products, as alleged herein, violates California Civil Code Sections 1750, *et seq.* (the "**CLRA**") and California Business and Professions Code Sections 17500, *et seq.* (the "**FAL**") as set forth below in the sections regarding those causes of action.

98. **Fraud.** Additionally, Defendants' use of the Material Omissions to sell the Products violates California Civil Code Sections 1572 (actual fraud), 1573 (constructive fraud), 1709-1710 (fraudulent deceit), and 1711 (deceit upon the public), as set forth above.

99. **Additional Violations.** Defendants' conduct in making the deceptive omissions described herein constitutes a knowing failure to adopt policies in accordance with and/or adherence to applicable laws, as set forth herein, all of which are binding upon and burdensome to their competitors. This conduct engenders an unfair competitive advantage for Defendants, thereby constituting an unfair, fraudulent and/or unlawful business practice under California Business and Professions Code Sections 17200-17208. Additionally, Defendants' misrepresentations of material facts, as set forth herein, violate California Civil Code Sections 1572, 1573, 1709, 1710, 1711, and 1770, as well as the common law.

100. **Unlawful Conduct.** Defendants' packaging, labeling, and advertising of the Products, as alleged herein, are deceptive, misleading, and unreasonable, and constitute unlawful conduct. Defendants knew or should have known of their unlawful conduct.

101. **Reasonably Available Alternatives.** Defendants had reasonably available alternatives to further their legitimate business interests, other than the conduct described herein. Defendants could have refrained from labeling the Products with the Material Omissions.

102. **Business Practice.** All of the conduct alleged herein occurs and continues to occur in Defendants' business. Defendants' wrongful conduct is part of a pattern or generalized course of conduct.

103. **Injunction.** Pursuant to California Business and Professions Code Section 17203, Plaintiff and the California Subclass seek an order of this Court enjoining Defendants from continuing to engage, use, or employ their practice of deceptive advertising of the Products.

104. **Causation/Damages.** Plaintiff and the California Subclass have suffered injury in fact and have lost money as a result of Defendants' unlawful conduct. Plaintiff and the California Subclass paid an unwarranted premium for the Products. Plaintiff and the California Subclass would not have purchased the Products if they had known that Defendants purposely deceived consumers into believing that the Products were safe children's toys. Accordingly, Plaintiff seeks damages, restitution and/or disgorgement of ill-gotten gains pursuant to the UCL.

## COUNT TWO

### Violation of California False Advertising Law

### (Cal. Bus. & Prof. Code §§ 17500, *et seq.*)

### (*On Behalf of the California Subclass*)

105. **Incorporation by reference.** Plaintiff re-alleges and incorporate by reference all allegations contained in this complaint, as though fully set forth herein.

106. **California Subclass.** Plaintiff brings this claim individually and on behalf of the California Subclass who purchased the Products within the applicable statute of limitations.

107. **FAL Standard.**   The False Advertising Law, codified at California Business and Professions Code Sections 17500, *et seq.*, prohibits "unfair, deceptive, untrue or misleading advertising[.]"

108. **Material Omissions Disseminated to the Public.** Defendants violated Section 17500 when it advertised and marketed the Products through the unfair, deceptive, and misleading Material Omissions disseminated to the public through the Products' labeling, packaging, and advertising.  These representations were deceptive

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

because the Products do not conform to them.  The representations were material because they are likely to mislead a reasonable consumer into purchasing the Products.

109. **Knowledge.** In making and disseminating the representations alleged herein, Defendants knew or should have known that the representations were untrue or misleading, and acted in violation of Section 17500.

110. **Intent to sell.** Defendants' Material Omissions were specifically designed to induce reasonable consumers, like Plaintiff and the California Subclass, to purchase the Products.

111. **Causation/Damages.** As a direct and proximate result of Defendants' misconduct in violation of the FAL, Plaintiff and members of the California Subclass were harmed in the amount of the purchase price they paid for the Products and increased health risks to children using the Products. Further, Plaintiff and members of the Class have suffered and continue to suffer economic losses and other damages including, but not limited to, the amounts paid for the Products, and any interest that would have accrued on those monies, in an amount to be proven at trial. Accordingly, Plaintiff seeks a monetary award for violation of the FAL in damages, restitution, and/or disgorgement of ill-gotten gains to compensate Plaintiff and the California Subclass for said monies, as well as injunctive relief to enjoin Defendants' misconduct to prevent ongoing and future harm that will result.

112. **Punitive Damages.** Defendants' unfair, fraudulent, and unlawful conduct described herein constitutes malicious, oppressive, and/or fraudulent conduct warranting an award of punitive damages as permitted by law. Defendants' misconduct is malicious as Defendants acted with the intent to cause Plaintiff and consumers to pay for Products that they were not, in fact, receiving.  Defendants willfully and knowingly disregarded the rights of Plaintiff and consumers as Defendants were aware of the probable dangerous consequences of their conduct and deliberately failed to avoid misleading consumers, including Plaintiff. Defendants'

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

misconduct is oppressive as, at all relevant times, said conduct was so vile, base, and/or contemptible that reasonable people would look down upon it and/or otherwise would despise such corporate misconduct. Said misconduct subjected Plaintiff and consumers to cruel and unjust hardship in knowing disregard of their rights. Defendants' misconduct is fraudulent as Defendants, at all relevant times, intentionally misrepresented and/or concealed material facts with the intent to deceive Plaintiff and consumers. The wrongful conduct constituting malice, oppression, and/or fraud was committed, authorized, adopted, approved, and/or ratified by officers, directors, and/or managing agents of Defendants.

## COUNT THREE

### Violation of California Consumers Legal Remedies Act

### (Cal. Civ. Code §§ 1750, *et seq.*)

### (*On Behalf of the California Subclass*)

113. **Incorporation by Reference.** Plaintiff re-alleges and incorporates by reference all allegations contained in this complaint, as though fully set forth herein.

114. **California Subclass.** Plaintiff brings this claim individually and on behalf of the California Subclass who purchased the Products within the applicable statute of limitations.

115. **CLRA Standard.** The CLRA provides that "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer are unlawful."

116. **Goods/Services.** The Products are "goods," as defined by the CLRA in California Civil Code Section 1761(a).

117. **Defendants.** Defendants are "persons," as defined by the CLRA in California Civil Code Section 1761(c).

118. **Consumers.** Plaintiff and members of the California Subclass are "consumers," as defined by the CLRA in California Civil Code Section 1761(d).

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

119. **Transactions.** The purchase of the Products by Plaintiff and members of the California Subclass are "transactions" as defined by the CLRA under California Civil Code Section 1761(e).

120. **Violations of the CLRA.** Defendants violated the following sections of the CLRA by selling the Products to Plaintiff and the California Subclass through the misleading, deceptive, and fraudulent Material Omissions:

a. Section 1770(a)(5) by representing that the Products have "characteristics, . . . uses [or] benefits . . . which [they] do not have."

b. Section 1770(a)(7) by representing that the Products "are of a particular standard, quality, or grade . . . [when] they are of another."

c. Section 1770(a)(9) by advertising the Products "with [the] intent not to sell them as advertised."

121. **Knowledge.** Defendants' uniform and material representations and omission regarding the Products were likely to deceive, and Defendants knew or should have known that their representations and omissions were misleading.

122. **Malicious.** Defendants' conduct is malicious, fraudulent, and wanton in that Defendants intentionally misled and withheld material information from consumers, including Plaintiff, to increase the sale of the Products.

123. **Plaintiff Could Not Have Avoided Injury.** Plaintiff and members of the California Subclass could not have reasonably avoided such injury. Plaintiff and members of the California Subclass were unaware of the existence of the facts that Defendants suppressed and failed to disclose, and Plaintiff and members of the California Subclass would not have purchased the Products and/or would have purchased them on different terms had they known the truth.

124. **Causation/Reliance/Materiality.** Plaintiff and the California Subclass suffered harm as a result of Defendants' violations of the CLRA because they relied on the Material Omissions in deciding to purchase the Products. The Material Omissions were a substantial factor. The Material Omissions was material because a

1 reasonable consumer would consider it important in deciding whether to purchase the
2 Products.

3    125. **Section 1782(d)—Prelitigation Demand/Notice.** Pursuant to California
4 Civil Code Section 1782, concurrent to the filing of this complaint, Plaintiff's counsel,
5 acting on behalf of Plaintiff and members of the class, mailed a Demand Letter via
6 U.S. certified mailed return receipt requested addressed to Defendant Spin Master and
7 Defendant Maya at their respective principal places of business registered with the
8 California Secretary of State (Spin Master, Inc.: 5880 West Jefferson Blvd., Suite A,
9 Los Angeles, CA 90016; The Maya Group, Inc.: 4202 Windsor Drive, Huntington
10 Beach, CA 92649) and their registered agents for service of process (Spin Master,
11 Inc.: CSC – Lawyers Incorporating Service, 2710 Gateway Oaks Drive, Suite 150N,
12 Sacramento, CA 95833; The Maya Group, Inc.: Oded Ben-Ezer, 4202 Windsor Drive,
13 Huntington Beach, CA 92649). At the appropriate time, Plaintiff will amend the
14 operative complaint to seek monetary damages pursuant to the CLRA.

15    126. **Causation/Damages.** As a direct and proximate result of Defendants'
16 misconduct in violation of the CLRA, Plaintiff and members of the California
17 Subclass were harmed in the amount of the purchase price they paid for the Products.
18 Further, Plaintiff and members of the Class have suffered and continue to suffer
19 economic losses and other damages including, but not limited to, the amounts paid
20 for the Products, and any interest that would have accrued on those monies, in an
21 amount to be proven at trial.

22    127. **Injunction.** Pursuant to California Civil Code Section 1780, Plaintiff and
23 members of the California Subclass are entitled to seek, and do hereby seek,
24 injunctive relief to put an end to Defendants' violations of the CLRA and to dispel
25 the public misperception generated, facilitated, and fostered by Defendants' false
26 advertising campaign. Plaintiff has no adequate remedy at law. Without equitable
27 relief, Defendants' unfair and deceptive practices will continue to harm Plaintiff and
28 the California Subclass. Accordingly, Plaintiff seeks an injunction to enjoin

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

Defendants from continuing to employ the unlawful methods, acts, and practices alleged herein pursuant to Section 1780(a)(2) and otherwise require Defendants to take corrective action necessary to dispel the public misperception engendered, fostered, and facilitated through Defendants' deceptive labeling of the Products with the Material Omissions.

## COUNT FOUR

### Breach of Warranty

### (*On Behalf of the Nationwide Class and California Subclass*)

128. **Incorporation by Reference.** Plaintiff re-alleges and incorporates by reference all allegations contained in this complaint, as though fully set forth herein.

129. **Nationwide Class & California Subclass.** Plaintiff brings this claim individually and on behalf of the Nationwide Class and California Subclass (the Class) who purchased the Products within the applicable statute of limitations.

130. **Express Warranty.** By advertising and selling the Products at issue, Defendants made promises and affirmations of fact on the Products' packaging and labeling, and through their marketing and advertising, as described herein. This labeling and advertising constitute express warranties and became part of the basis of the bargain between Plaintiff and members of the Class and Defendants. Through the Material Omissions on the Products' labeling, packaging, and advertising, Defendants expressly warrant that the Products do not pose a risk of the Material Dangers.

131. **Implied Warranty of Merchantability.** By advertising and selling the Products at issue, Defendants, merchants of goods, made promises and affirmations of fact that the Products are merchantable and conform to the promises or affirmations of fact made on the Products' packaging and labeling, and through their marketing and advertising, as described herein. The Material Omissions on the Products' labels, packaging, and advertising, in addition to the implied warranty of merchantability, constitute implied warranties that became part of the basis of the bargain between

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Plaintiff and members of the Class and Defendants—to wit, that the Products do not pose a risk of the Material Dangers.

132. **Breach of Warranty.** Contrary to Defendants' warranties, the Products do pose a risk of the Material Dangers and, therefore, Defendants breached their warranties about the Products and their qualities.

133. **Causation/Remedies.** As a direct and proximate result of Defendants' breach of warranty, Plaintiff and members of the Class were harmed in the amount of the purchase price they paid for the Products. Further, Plaintiff and members of the Class have suffered and continue to suffer economic losses and other damages including, but not limited to, the amounts paid for the Products, and any interest that would have accrued on those monies, in an amount to be proven at trial. Accordingly, Plaintiff seeks a monetary award for breach of warranty in the form of damages, restitution, and/or disgorgement of ill-gotten gains to compensate Plaintiff and the Class for said monies, as well as injunctive relief to enjoin Defendants' misconduct to prevent ongoing and future harm that will result.

134. **Punitive Damages.**  Plaintiff seeks punitive damages pursuant to this cause of action for breach of warranty on behalf of Plaintiff and the Class. Defendants' unfair, fraudulent, and unlawful conduct described herein constitutes malicious, oppressive, and/or fraudulent conduct warranting an award of punitive damages as permitted by law. Defendants' misconduct is malicious as Defendants acted with the intent to cause Plaintiff and consumers to pay for Products that they were not, in fact, receiving.  Defendants willfully and knowingly disregarded the rights of Plaintiff and consumers as Defendants were aware of the probable dangerous consequences of their conduct and deliberately failed to avoid misleading consumers, including Plaintiff. Defendants' misconduct is oppressive as, at all relevant times, said conduct was so vile, base, and/or contemptible that reasonable people would look down upon it and/or otherwise would despise such misconduct. Said misconduct subjected Plaintiff and consumers to cruel and unjust hardship in knowing disregard

of their rights. Defendants' misconduct is fraudulent as Defendants, at all relevant times, intentionally misrepresented and/or concealed material facts with the intent to deceive Plaintiff and consumers. The wrongful conduct constituting malice, oppression, and/or fraud was committed, authorized, adopted, approved, and/or ratified by officers, directors, and/or managing agents of Defendants.

## COUNT FIVE

### Fraudulent Inducement – Intentional Misrepresentation
### (*On Behalf of the Nationwide Class and California Subclass*)

135. **Incorporation by Reference.** Plaintiff re-alleges and incorporates by reference all allegations contained in this complaint, as though fully set forth herein.

136. **Nationwide Class & California Subclass**. Plaintiff brings this claim individually and on behalf of the Nationwide Class and California Subclass (the Class) who purchased the Products within the applicable statute of limitations.

137. **Defendants' Misrepresentation through Omissions.** By labeling and marketing the Products with the Material Omissions, Defendants failed to disclose risk posed the Products.

138. **Defendants' Knowledge.** Defendants knew, or should have known, that the Products were deceptively labeled and advertised, and that the knowledge of the Products posed the Obstruction Omission and Non-Detection Dangers.

139. **Material Omissions.** Defendants knew, or should have known, that the Obstruction Omission and the Non-Detection Omission on the labeling and advertising of the Products were material, and that a reasonable consumer would rely on the Products' labels, packaging, and advertising to ascertain the safety risks posed by the Products when making purchasing decision.

140. **Plaintiff's Knowledge.** Plaintiff and Class Members did not know, nor could they have known through reasonable diligence, that the Products pose the Material Dangers.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

141. **Reasonable Reliance.** In making their purchasing decisions, Plaintiff and Class Members reasonably relied on Defendants' false, deceptive, and misleading labeling and advertising because the Products' packaging, labels, and advertising as children's toys convey that the Products are safe for children. Additionally, the Material Omissions on the Products' labels, packaging, and advertising convey that the Products do not pose a risk of the Material Dangers. Lastly, Plaintiff's and Class Members' reliance on Defendants' labeling, packaging, and advertisements was reasonable as the Products, Defendants, and their brand are trusted and hold a reputation for safety, quality, and reliability.

142. **Intentional Inducement.** Defendants intended to induce—and did, indeed, induce—Plaintiff and Class Members to purchase the Products in reliance on the Material Omissions on the Products' labels, packaging, and advertisements, despite the fact that the Products pose serious risks to children, including the Material Dangers.

143. **Causation/Remedies.** As a direct and proximate result of Defendants' intentional Material Omissions on the Products' labels, packaging, and advertisements, Plaintiff and members of the Class purchased the Products and were, thereby, harmed in the amount of the purchase price they paid for the Products or otherwise overpaid for Products that do not pose a risk of the Material Dangers. Further, Plaintiff and members of the Class have suffered and continue to suffer economic losses and other damages, including, but not limited to, the amounts paid or overpaid for the Products, and any interest that would have accrued on those monies, in an amount to be proven at trial. Accordingly, Plaintiff seeks a monetary award for fraudulent inducement by intentional misrepresentation in the form of damages, restitution, and/or disgorgement of ill-gotten gates to compensate Plaintiff and the Class for said monies, as well as injunctive relief, including without limitation, public injunctive relief, to enjoin Defendants' misconduct and to prevent ongoing and future harm that will result.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

144. **Punitive Damages.** Defendants' unfair, fraudulent, and unlawful conduct described herein constitutes malicious, oppressive, and/or fraudulent conduct warranting an award of punitive damages as permitted by law. Defendants' misconduct is malicious as Defendants acted with the intent to cause Plaintiff and consumers to pay for Products that they were not, in fact, receiving.  Defendants willfully and knowingly disregarded the rights of Plaintiff and consumers as Defendants were aware of the probable dangerous consequences of their conduct and deliberately failed to avoid misleading consumers, including Plaintiff. Defendants' misconduct is oppressive as, at all relevant times, said conduct was so vile, base, and/or contemptible that reasonable people would look down upon it and/or otherwise would despise such corporate misconduct.  Said misconduct subjected Plaintiff and consumers to cruel and unjust hardship in knowing disregard of their rights. Defendants' misconduct is fraudulent as Defendants, at all relevant times, intentionally misrepresented and/or concealed material facts with the intent to deceive Plaintiff and consumers. The wrongful conduct constituting malice, oppression, and/or fraud was committed, authorized, adopted, approved, and/or ratified by officers, directors, and/or managing agents of Defendants.

## COUNT SIX

### Negligent Misrepresentation

### (*On Behalf of the Nationwide Class and California Subclass*)

145. **Incorporation by Reference.** Plaintiff re-alleges and incorporates by reference all allegations contained in this complaint, as though fully set forth herein.

146. **Nationwide Class & California Subclass**. Plaintiff brings this claim individually and on behalf of the Nationwide Class and California Subclass (the Class) who purchased the Products within the applicable statute of limitations.

147. **Duty.** Defendants had a duty to Plaintiff and the Class to exercise reasonable and ordinary care in the development, testing, manufacture, marketing, distribution, and sale of the Products.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

148. **Breach.** Defendants breached their duty to Plaintiff and the Class by failing to exercise reasonable care in the marketing, labeling, packaging, advertising, and selling of the Products to Plaintiff and the Class without the qualities, characteristics, and suitability for use as advertised by Defendants. Defendants did so by failing to adequately warn Plaintiff and the Class of the Material Dangers, and by failing to promptly remove the Products from the marketplace or otherwise take appropriate remedial action. Specifically, the Products pose serious and life-threatening health risks to children, including the Material Dangers.

149. **Defendants' Misrepresentation Through Omissions.** By labeling, packaging, advertising, marketing, and selling the Products with the Obstruction Omission and the Non-Detection Omission, Defendants failed to exercise reasonable care to warn of the Material Dangers posed by the Products and, accordingly, negligently misrepresented the safety of the Products, including misrepresenting that the Products do not pose a risk of the Material Dangers.

150. **No Reasonable Grounds.** Defendants knew or should have known that the qualities and characteristics of the Products were not as advertised, labeled, packaged, marketed, or otherwise represented, that the Products were not suitable for their intended use, and that the Products were otherwise not as warranted and represented by Defendants. Specifically, Defendants knew or should have known that the Products pose life-threatening and serious health risks to children, including the Material Dangers. Defendants had no reasonable grounds for concealing or failing to identify the Material Dangers, warn of the Material Dangers, or otherwise advertise, label, package, market, and sell the Products with the Material Omissions.

151. **Material Omissions.** Defendants knew, or should have known, that the Obstruction Omission and the Non-Detection Omission on the Products' labels, packaging, and advertising were material to consumers in deciding whether to buy the Products; and that a reasonable consumer would rely on Defendants' labels,

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

packaging, and advertising to ascertain the risks posed by the Products when making purchasing decision.

152. **Defendants' Knowledge.** Defendants knew or should have known of the Products' Material Dangers; that consumers rely on Defendants to disclose on the Products' labels, packaging, and advertisements all of the Products' life-threatening and serious health risks from reasonably foreseeable use and misuse of the Products, including the Material Dangers; and that the Products' labels, packaging, and advertisements fail to adequately disclose the Material Dangers.

153. **Reasonable Reliance.** In making their purchasing decisions, Plaintiff and Class Members reasonably relied on Defendants' Material Omissions on the Products' labels, packaging, and advertising to disclose all of the Products' life-threatening and serious health risks, including the Material Dangers.

154. **Intentional Inducement.** Defendants affirmatively misrepresented that the Products are safe for use as children's toys—specifically, that the Products do not pose life-threatening and serious health risks (to wit, the Material Dangers). Defendants deliberately and intentionally omitted the Material Dangers from the Products' labels, packaging, and advertising. Defendants intentionally and deliberately made these affirmative misrepresentations and Material Omissions to induce Plaintiff and Class Members to purchase the Products. Plaintiff and Class Members were induced to buy or overpay for the Products as a result of the Material Omissions.

155. **Causation/Remedies.** As a direct and proximate result of Defendants' negligent misrepresentation, Plaintiff and members of the Class were harmed in the amount of the purchase price they paid or overpaid for the Products. Further, Plaintiff and members of the Class have suffered and continue to suffer economic losses and other damages, including, but not limited to, the amounts paid or overpaid for the Products, and any interest that would have accrued on those monies, in an amount to be proven at trial. Accordingly, Plaintiff seeks a monetary award for negligent

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

misrepresentation in the form of damages, restitution, and/or disgorgement of ill-gotten gains to compensate Plaintiff and the Class for said monies, as well as injunctive relief, including without limitation, public injunctive relief, to enjoin Defendants' misconduct to prevent ongoing and future harm that will result.

156. **Punitive Damages.** Defendants' unfair, fraudulent, and unlawful conduct described herein constitutes malicious, oppressive, and/or fraudulent conduct warranting an award of punitive damages as permitted by law. Defendants' misconduct is malicious as Defendants acted with the intent to cause Plaintiff and consumers to pay for Products that they were not, in fact, receiving. Defendants willfully and knowingly disregarded the rights of Plaintiff and consumers as Defendants were aware of the probable dangerous consequences of their conduct and deliberately failed to avoid misleading consumers, including Plaintiff. Defendants' misconduct is oppressive as, at all relevant times, said conduct was so vile, base, and/or contemptible that reasonable people would look down upon it and/or otherwise would despise such corporate misconduct. Said misconduct subjected Plaintiff and consumers to cruel and unjust hardship in knowing disregard of their rights. Defendants' misconduct is fraudulent as Defendants, at all relevant times, intentionally misrepresented and/or concealed material facts with the intent to deceive Plaintiff and consumers. The wrongful conduct constituting malice, oppression, and/or fraud was committed, authorized, adopted, approved, and/or ratified by officers, directors, and/or managing agents of Defendants.

## <u>COUNT SEVEN</u>

### Unjust Enrichment/Restitution

#### (*On Behalf of the Nationwide Class and California Subclass*)

157. **Incorporation by Reference.** Plaintiff re-alleges and incorporates by reference all allegations contained in this complaint, as though fully set forth herein.

158. **Nationwide Class & California Subclass.** Plaintiff brings this claim individually and on behalf of the Nationwide Class and California Subclass (the Class) who purchased the Products within the applicable statute of limitations.

159. **Plaintiff/Class Conferred a Benefit.** By purchasing the Products, Plaintiff and members of the Class conferred a benefit on Defendants in the form of the purchase price of the Products.

160. **Defendants' Knowledge of Conferred Benefit.** Defendants had knowledge of such benefit and Defendants appreciated the benefit because, were consumers not to purchase the Products, Defendants would not generate revenue from the sales of the Products.

161. **Defendants' Unjust Receipt Through Deception.** Defendants' knowing acceptance and retention of the benefit is inequitable and unjust because the benefit was obtained by Defendants' fraudulent, misleading, and deceptive representations and omissions.

162. **Causation/Damages.** As a direct and proximate result of Defendants' unjust enrichment, Plaintiff and members of the Class were harmed in the amount of the purchase price they paid for the Products. Further, Plaintiff and members of the Class have suffered and continue to suffer economic losses and other damages including, but not limited to, the amounts paid for the Products, and any interest that would have accrued on those monies, in an amount to be proven at trial. Accordingly, Plaintiff seeks a monetary award for unjust enrichment in damages, restitution, and/or disgorgement of ill-gotten gains to compensate Plaintiff and the Class for said monies, as well as injunctive relief to enjoin Defendants' misconduct to prevent ongoing and future harm that will result.

163. **Punitive Damages**. Plaintiff seeks punitive damages pursuant to this cause of action for unjust enrichment on behalf of Plaintiff and the Class. Defendants' unfair, fraudulent, and unlawful conduct described herein constitutes malicious, oppressive, and/or fraudulent conduct warranting an award of punitive damages as

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

permitted by law. Defendants' misconduct is malicious as Defendants acted with the intent to cause Plaintiff and consumers to pay for Products that they were not, in fact, receiving.  Defendants willfully and knowingly disregarded the rights of Plaintiff and consumers as Defendants were aware of the probable dangerous consequences of their conduct and deliberately failed to avoid misleading consumers, including Plaintiff. Defendants' misconduct is oppressive as, at all relevant times, said conduct was so vile, base, and/or contemptible that reasonable people would look down upon it and/or otherwise would despise such corporate misconduct. Said misconduct subjected Plaintiff and consumers to cruel and unjust hardship in knowing disregard of their rights. Defendants' misconduct is fraudulent as Defendants, at all relevant times, intentionally misrepresented and/or concealed material facts with the intent to deceive Plaintiff and consumers. The wrongful conduct constituting malice, oppression, and/or fraud was committed, authorized, adopted, approved, and/or ratified by officers, directors, and/or managing agents of Defendants.

## VIII. <u>**PRAYER FOR RELIEF**</u>

164. WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, pray for judgment against Defendants as follows:

   a. **Certification:** For an order certifying this action as a class action, appointing Plaintiff as the Class Representative, and appointing Plaintiff's Counsel as Class Counsel;

   b. **Declaratory Relief:** For an order declaring that Defendants' conduct violates the statutes and laws referenced herein consistent with applicable law and pursuant to only those causes of action so permitted;

   c. **Injunction:** For an order requiring Defendants to change their business practices to prevent or mitigate the risk of the consumer deception and violations of law outlined herein. This includes, for example, orders that Defendants immediately cease and desist from selling the unlawful Products in violation of law; that enjoin Defendants from continuing to market, advertise, distribute, and sell the Products in the unlawful manner described herein; that require Defendants to engage in an affirmative advertising campaign to dispel the public misperception of the Products resulting from Defendants' unlawful conduct; and/or that require Defendants to take all further and just corrective action, consistent with applicable law and pursuant to only those causes of action so permitted;

   d. **Damages/Restitution/Disgorgement:** For an order awarding monetary

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

compensation in the form of damages, restitution, and/or disgorgement to Plaintiff and the Class, consistent with applicable law and pursuant to only those causes of action so permitted;

e. **Punitive Damages/Penalties:** For an order awarding punitive damages, statutory penalties, and/or monetary fines, consistent with applicable law and pursuant to only those causes of action so permitted;

f. **Attorneys' Fees & Costs:** For an order awarding attorneys' fees and costs, consistent with applicable law and pursuant to only those causes of action so permitted;

g. **Pre/Post-Judgment Interest:** For an order awarding pre-judgment and post-judgment interest, consistent with applicable law and pursuant to only those causes of action so permitted; and

h. **All Just & Proper Relief:** For such other and further relief as the Court deems just and proper.

Dated: October 31, 2023                    Respectfully submitted,

                                           **CLARKSON LAW FIRM, P.C.**
                                           By:

                                            _/s/ Katherine A. Bruce_
                                           Ryan J. Clarkson
                                           Katherine A. Bruce
                                           Kelsey J. Elling

                                           *Attorneys for Plaintiff*

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

CLASS ACTION COMPLAINT

# **DEMAND FOR JURY TRIAL**

165.  Plaintiff hereby demands a trial by jury on all issues and causes of action so triable.

Dated: October 31, 2023

Respectfully submitted,

**CLARKSON LAW FIRM, P.C.**
By:

  */s/ Katherine A. Bruce*
Ryan J. Clarkson
Katherine A. Bruce
Kelsey J. Elling

*Attorneys for Plaintiff*

CLASS ACTION COMPLAINT